Cary S. DOGGETT, Jr., Helen Doggett, Plaintiffs,

v.

RITTER FINANCE COMPANY OF LOUISA, Defendant.

Civ. A. No. 74-13(C).

United States District Court, W. D. Virginia, Charlottesville Division.

Oct. 2, 1974.

**152**

———◆———

Edward P. Nolde, Charlottesville-Albemarle Legal Aid Society, Charlottesville, Va., for plaintiffs.

Lindsay G. Dorrier, Jr., Paxson, Smith, Boyd, Gilliam & Gouldman, Inc., Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

This action alleges violations of the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq. (1974), commonly known as the Truth in Lending Act, and the regulations promulgated thereunder, 12 C.F.R. § 226.1 et seq. (1974). This court has jurisdiction of this matter under 15 U.S.C. § 1640(e) (1974). Because there is no genuine dispute as to any material facts, the case is appropriately before the court on a motion for summary judgment.

Plaintiffs are husband and wife who have received an extension of credit regulated by the Act and are "consumers" as defined by 15 U.S.C. § 1602(h) (1974).

Defendant, Ritter Finance Company, Inc. of Charlottesville, Virginia, is in the business of extending credit for which the payment of a finance charge is required and is a "creditor" as defined by 15 U.S.C. § 1602(f) (1974).

In November, 1973, plaintiffs went to Defendant's office for the purpose of securing a loan. Defendant agreed to lend plaintiffs the amount of $735.00, payable in 21 consecutive monthly installments of $35.00. From this amount was immediately deducted a "Finance Charge" of $149.25, at an annual percentage rate of 25.95% and insurance premiums totalling $32.08 for credit life and disability insurance. The adequacy of Defendant's "disclosure" of the cost of these insurance premiums forms the basis of this suit. The amount of money plaintiffs actually received was $553.-67.[1] At the time of this credit transaction between plaintiffs and defendant, one of defendant's employees exhibited a form entitled "Combined Note and Disclosures Required by Federal and State Law", which plaintiffs signed as joint and several obligors. It is this form that plaintiffs now claim to be inadequate under the Act.

Plaintiffs assert three violations of the Consumer Credit Act.

(1) Defendant failed to include in its disclosures a statement of the type and term of insurance offered in violation of 12 CFR §§ 226.4(a)(5),[2]

---

1. The credit transaction consisted of the following elements:

Face amount of Loan (Total of
 payments) .................... $735.00
Less: Added charges
 (Finance charges) .......... 149.25
Amount Financed ................ 585.75
Less: Life Insurance Premium ..... 10.03
Less: Disability Insurance Premium ..................... 22.05
Cash advanced to customer ........ 553.67

2. 12 C.F.R. § 226.4(a) provides:
§ 226.4 Determination of finance charge.

(a) *General rule.* Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

(1) Interest, time price differential, and any amount payable under a discount or other system of additional charges.

(2) Service, transaction, activity or carrying charge.

(3) Loan fee, points, finder's fee, or similar charge.

(4) Fee for an appraisal, investigation, or credit report.

(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

226.8 [3] and 226.402.[4]

(2) Defendant failed to disclose clearly and conspicuously that plaintiffs may decline to purchase Credit Life Insurance while choosing to purchase Credit Disability Insurance in violation of 15 U.S.C. § 1605(b)[5] and 12 C.F.R. § 226.4(a)(5).

(3) Defendant failed to disclose adequately the cost of Credit Life and Disability Insurance by placing the amount of the premiums for the insurance in a different place than the place for the plaintiffs' separately signed authorization for insurance in violation of 15 U.S.C. § 1605(b) and 12 C.F.R. § 226.4(a)(5)(ii).

I

"Disclosure" under the Act is a term of art which refers to the manner in which certain information, deemed basic by Congress to an intelligent assessment of a credit transaction, shall be conveyed to the consumer. Title 12 C.F.R. § 226.8(a) prescribes this manner of presentation and requires that all information that must be disclosed be set out either on the same side of the page as the promissory note or on one side of a separate statement which identifies the transaction. The Act always uses the term "disclosure", and all grammatical forms thereof, in its technical sense to trigger the form requirements of § 226.8. Consequently, the requirements of disclosure do not apply to all information that a creditor might furnish to a borrower, but only to that information the Act requires to be "disclosed" to a borrower. This required information, in non-sale credit transaction, is set out in 12 C.F.R. § 226.8(b) and (d) and 12 C.F.R. § 226.4(a). Addition-

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

(6) Charges or premiums for insurance, written in connection with any credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, unless a clear, conspicuous, and specific statement in writing is furnished by the creditor to the customer setting forth the cost of the insurance if obtained from or through the creditor and stating that the customer may choose the person through which the insurance is to be obtained.

(7) Premium or other charge for any other guarantee or insurance protecting the creditor against the customer's default or other credit loss.

(8) Any charge imposed by a creditor upon another creditor for purchasing or accepting an obligation of a customer if the customer is required to pay any part of that charge in cash, as an addition to the obligation or as a deduction from the proceeds of the obligation.

3. 12 C.F.R. § 226.8 provides in pertinent part:
"(a) . . . All of the disclosures shall be made together on either:
(1) The note or other instrument evidencing the obligation on the same side of the page and above or adjacent to the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction.

4. 12 C.F.R. § 226.402 provides in pertinent part:
"(b) Under § 226.4(h) the cost of insurance for the full period of insurance coverage which the creditor will require shall be disclosed if the cost of the insurance premium is required to be included in the finance charge. However, if the cost of insurance is not required to be included in the finance charge, the cost to be disclosed need only be the cost of premiums for the term of the initial policy or policies written in connection with the transaction, accompanied by a statement of the type of insurance and the term thereof."

5. 15 U.S.C. § 1605(b) provides:
"(b) Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charge unless:
(1) The coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and
(2) In order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof.

al information given to a customer need not be presented to a borrower in the manner prescribed by § 226.8.[6] Moreover, it is the clear legislative intent that the disclosure requirement of the act is not to restrict information flow to the borrower, but only to ensure that certain information will be clearly and conspicuously brought ·to the borrower's attention and not obscured by other information.

Plaintiffs argue as follows: The "finance charge" is required to be disclosed under 12 C.F.R. § 226.8; the creditor must disclose the "cost" of any credit insurance under 12 C.F.R. § 226.4; in order for these disclosures to be adequate, defendant must also disclose the term of this insurance in the same manner as other disclosures. In support of this contention, plaintiffs refer this court to an interpretation by the Federal Reserve Board of 15 U.S.C. § 1605 contained in 12 C.F.R. § 226.402 and the case of Philbeck v. Timmers Chevrolet, Inc., 361 F. Supp. 1255 (N.D.Ga.1973).

Section 226.402 interprets the Act to mean that when insurance is optional, as it was in this case, the Act requires disclosure of the cost of premiums for the term of the initial policy or policies written in connection with the transaction, "accompanied by a statement of the type of insurance and the term thereof." Plaintiffs and defendant agree that § 226.402 is a valid exercise of the Board's authority to promulgate regulations and interpretations. Here, the parties' agreement ends. Plaintiffs urge this court to rule that the phrase "accompanied by a statement . . . of . . . the term . . ." of the insurance requires "disclosure" of the type and term of the insurance as well as the cost. Defendant on the other hand asserts that § 226.402 requires only that a statement of the term and type of insurance be supplied the borrower, which was done in this case. This court is constrained to agree with the defendant.

Volume 12 C.F.R. § 226.8 details what information must be disclosed in the manner prescribed by that section. Though no specific mention of insurance is made by that section, § 226.4 lists all elements of the "finance charge" which must be disclosed. Section 226.4(a)(5)-(ii) indicates that premiums on insurance written in connection with a credit transaction must be included in the "finance charge" unless (a) the insurance is not required, (b) this fact is disclosed, and (c) the borrower specifically authorizes in writing his desire to purchase such insurance. That section does not require the "term" or "type" of insurance to be disclosed, only the "cost". Plaintiffs argue, nevertheless, that "cost" is meaningful only in relation to the term of insurance. Assuming *arguendo* this to be true, the question remains whether the Act requires that "term" and "type" information be afforded the special treatment afforded information required to be given by the Act.

The language of § 226.402(b) does not say that the "term" and "type" of optional insurance be "disclosed", but only that such information "accompany" a "disclosure" of the cost. When one considers that the term "disclosure" is always used precisely and technically to trigger the requirements of § 226.8, this court believes that the term "disclosure" was intentionally not applied to "term" and "type" information. It would have been an easy matter to include "term" and "type" with "cost" in the preceding phrase requiring disclosure. Furthermore, even if § 226.402 intended "term" and "type" to be disclosed, given the

---

6. This is clear from two provisions. 15 U.S.C. § 1632(b) (1974) states that "any creditor may supply additional information or explanation with any disclosures required under this part." This provision is amplified by 12 C.F.R. § 226.6(c) which provides that "at the creditor's option, additional informa- tion or explanation may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or contradict, obscure, or detract attention from the information required by this part to be disclosed."

possible penalties for nondisclosure, it is only fair to require the Board to state clearly what is required to be disclosed and not to make a creditor act at his peril. This court therefore holds that the type and term of optional insurance need not be "disclosed" with other required information and that Defendant has substantially complied with the requirements of § 226.402.

Plaintiffs also cite in support of their position Philbeck v. Timmers Chevrolet, Inc., 361 F.Supp. 1255 (N.D.Ga.1973). This court will only say that with respect to the facts of the case at bar, the reasoning of *Philbeck* is unpersuasive.[7]

## II

Because plaintiffs' second and third contentions are related, this court will treat them together. Plaintiffs claim that Defendant violated 15 U.S.C. § 1605(b) and 12 C.F.R. § 226.4(a)(1) by failing to indicate clearly and conspicuously that plaintiff may decline to purchase Credit Life Insurance while choosing to purchase Credit Disability Insurance and (2) by failing to disclose adequately the cost of Credit Life and Disability Insurance since the amount of premiums for the insurance was not incorporated in the separately signed authorization for insurance required by 12 C.F.R. § 226.4(a)(5)(ii).

■ (1) There is no requirement that credit insurance be offered to a borrower. Similarly, there is no prohibition *per se* against offering Credit Life and Disability Insurance as a package without the opportunity to purchase credit disability alone. That plaintiff could not choose to purchase credit disability insurance without credit life insurance, standing alone, therefore does not state a violation of either 15 U.S.C.

§ 1605(b) or 12 C.F.R. § 226.4(a)(5).[8] Jones v. Community Loan and Investment Corp. of Fulton Co., CCH Consumer Credit Guide § 98,787 (N.D.Ga. No. 18382, March 22, 1974).

(2) However, defendant's decision to offer Credit Life and Disability Insurance as a package does affect the adequacy of the disclosure required by 15 U.S.C. § 1605(b) and 12 C.F.R. § 226.-4(a)(5). Sections 226.4(a)(5)(i) and (ii) provide that when credit insurance is optional, a creditor must clearly indicate that insurance is not required and receive from the borrower "a specific dated and separately signed affirmative written indication of such desire *after receiving written disclosure to him of the cost of such insurance.*" (emphasis added). Such written disclosure of the cost must be made clearly and conspicuously. 12 C.F.R. § 226.6. Defendant has failed to disclose this cost "clearly and conspicuously."

In order to facilitate compliance with the Act, this court will in detail consider Defendant's form of disclosures:

■ (A) This court agrees with the Defendant that its disclosure that Credit Life and Disability Insurance is not required to obtain the loan is adequate. However, Credit Life and Disability Insurance is only one type of insurance that the Defendant offers. Defendant also offers "Credit Life Insurance," and "Joint Credit Life Insurance." That any or all of these other types of insurance is not required is stated in the paragraph that reads as follows:

"CREDIT LIFE AND DISABILITY INSURANCE is not required to obtain this loan. If Borrowers desire credit life insurance, the charge stated above will be included in the amount financed and the insurance will cover the Borrower named in the certificate

---

7. Following the preparation of this opinion, the decision in *Philbeck* was reversed by the Court of Appeals for the Fifth Circuit, Philbeck v. Timmers Chevrolet, Inc., 499 F.2d 971 (August 15, 1974).

8. It is unclear whether a borrower could in fact purchase credit disability insurance

alone. There is no signature line on Defendant's combined Note and Disclosure form to indicate that a borrower may purchase only disability insurance. A borrower is therefore as a practical matter precluded from purchasing only credit disability insurance.

of insurance as stated in the certificate delivered herewith. No charge is made for credit insurance and no credit insurance is provided unless one of the Borrowers signs the appropriate statement below."

Although Defendant's disclosure that no type of insurance is required could have been made clearer and more conspicuous, this court cannot say as a matter of law that Defendant's disclosure is inadequate.

■ (B) Approximately 1″ above the above-quoted disclaimer statement, separated by a series of blocks containing other data, Defendant's form contains three boxes labelled "Credit Life Insurance Charge", "Joint Credit Life Insurance Charge", and "Disability Insurance Charge" respectively. Immediately below the above-quoted disclaimer are four signature lines. "I desire Credit Life and Disability Insurance" appears immediately above the first signature line; "I desire Credit Life Insurance only" appears above the second; "I DO NOT want Credit Life or Disability Insurance" appears above the third; and "Joint Life Coverage" appears immediately after the fourth signature line. (See appendix A). This format is inadequate in two respects:

(1) This format is misleading because it fails to disclose the single charge of $32.08 assessed against borrowers who purchase credit life and disability insurance. Instead of the one disclosure of $32.08, the form discloses as the cost of credit life insurance only $10.03 and for credit disability insurance only $22.05 and requires the borrower to perceive and assume that the combined cost of these two types of insurance equals the cost of credit life and disability insurance. The inadequacy of this form of disclosure is even more apparent when one considers the above-quoted disclaimer. In that statement, the first sentence, "CREDIT LIFE AND DISABILITY INSURANCE" is not required to obtain this loan", is immediately followed by the statement, "If Borrowers

desire *credit life insurance* (emphasis added), the charge stated above will be included in the amount financed . ." Because the charge of $32.08 for credit life and disability insurance is not disclosed, the sequence of these statements obscures its true cost in that a borrower could reasonably think that the "credit life insurance" mentioned in the second sentence refers to the "credit life and disability insurance", printed in 10-point type and disclaimed in the immediately preceding sentence. The cost of credit life and disability insurance, however, is over three times the cost of credit life insurance alone; and the borrower must see on his own that "credit life" is different from and only one element of "credit life and disability insurance." By juxtaposing the terms "credit life" and "credit life and disability", the defendant obscures exactly which costs will be assessed. This obfuscation is compounded by the phrase "charge stated above", located in the second sentence of the paragraph disclaiming insurance. This phrase fails to adequately indicate which charges will be included in the Amount Financed should borrower sign under one of the authorizations listed below. It is easy to understand how a borrower could conclude after reading in 10-point type "CREDIT LIFE AND DISABILITY INSURANCE" in the preceding sentence, that the "charge stated above" for "credit life insurance" of $10.03 is the charge for the "Credit Life and Disability Insurance."

(2) Secondly, defendant's scheme of disclosures is misleading because it discloses a charge for "credit disability insurance" but does not afford the borrower the opportunity to purchase that type of insurance by itself.

Disclosing the cost of disability insurance serves no purpose other than to allow a borrower perceptive enough to see that disability insurance is one element of credit life and disability insurance to calculate the cost of the latter. As indicated above, the borrower should not be required to fathom defendant's insurance scheme. The borrower should be

informed of the cost of credit life and disability insurance directly by disclosing the charge of $32.08 immediately above the signature line authorizing its purchase. Similarly, the charge of $10.-03 for credit life insurance should be disclosed immediately above the signature line authorizing its purchase. Once disclosure is made in this form, disclosure of the price of credit disability insurance becomes unnecessary; and in view of the fact that the borrower cannot purchase credit disability insurance alone, disclosure of its cost is misleading and confusing. In short, the fundamental defect of Defendant's combined Note and Disclosure form as it now stands is that it discloses the cost for a type of credit insurance the borrower cannot purchase (credit disability insurance) but fails to clearly and conspicuously disclose the cost for a type of insurance the borrower can and normally does purchase (credit life and disability insurance).

■ The primary purpose of the Truth in Lending Act and the regulations in question is, of course, to aid consumers desiring to purchase credit by strengthening the competitive market for credit through full and fair disclosure of the actual costs involved. The court has no doubt that the disclosures relevant to the purchase of credit insurance as required by the Act and regulations could easily have been disclosed in a simple, non-confusing manner that would have left no questions in the mind of a consumer regarding whether insurance was required, the types of insurance available and the actual costs of the insurance. Although defendant has apparently attempted to come within the literal requirements of the Act and regulations, the confusion inherent in its disclosures regarding insurance, besides being obviously contrary to the spirit of the Act, are also sufficiently unclear and inconspicuous as to be in violation thereof.

Based on these reasons, the court therefore finds that the Defendant failed to disclose adequately the costs of its optional credit insurance and therefore violated 15 U.S.C. § 1605(b) and 12 C.F.R. § 226.4 by failing to include such costs in its Finance Charge.

### III

■ Defendant asserts as a defense that if it in fact violated the Act, it should nevertheless not be held liable since its violation was not intentional and resulted from a *bona fide* error under 15 U.S.C. § 1640(c). That section states:

"A creditor may not be held liable in any action brought under this section for a violation of this part if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

Courts have consistently held that this provision applied only to mistakes in the nature of clerical errors and not to mistaken interpretation of the Act's disclosure requirements. *See, e. g.*, Ratner v. Chemical Bank, 329 F.Supp. 270, 281 (S.D.N.Y.1971); Palmer v. Wilson, 359 F.Supp. 1099, 1102 (N.D.Cal.1973); Buford v. American Finance Co., 333 F. Supp. 1243, 1247–1248 (N.D.Ga.1971). This section is therefore not available to the Defendant as a defense to its violations of the Act.

### IV

■ The next question concerns the proper measure of damages. Title 15, U.S.C. § 1640(a) provides:

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the trans-

action, except that the liability under this paragraph shall not be less than $100 nor greater than $1000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorneys's fee as determined by the court.

Defendant extended credit to both plaintiffs, who under the terms of the note are jointly and severally liable for the total amount financed. However, since one obligor on the note would have a right of contribution against the other obligor upon full payment, each plaintiff, in effect, has been extended credit for one-half the total amount financed. Similarly, each plaintiff has assumed one-half of the total finance charge. The finance charge in this case was $149.25 plus $32.08 in insurance premiums that should have been included since that cost was inadequately disclosed, for a total finance charge of $181.33. The amount of damages, therefore, with respect to each plaintiff is twice times the finance charge assessed in connection with the amount of credit extended to each plaintiff. The finance charge assessed relative to each plaintiff was ½ ($188.33); and statutory damages for each plaintiff equal ½ ($181.-33) × 2 or $181.33. Total damages against the Defendant therefore equal 2 × $181.33 or $362.66 plus costs of this suit and reasonable attorney's fees.

### V

The final question is whether reasonable attorney's fees should be awarded to plaintiffs' attorney, a neighborhood legal services organization.

This court agrees with the decision of Judge Merhige in Jones v. Seldon's Furniture Warehouse et al., 357 F.Supp. 886 (E.D.Va.1973); and for the purposes of this case, adopts his opinion as the opinion of the court on this question. It is noteworthy that in this case, legal services undertook representation in this case only after the case was referred to private counsel who refused to accept it. This court accordingly grants reasonable attorney's fees to the Charlottesville-Albemarle Legal Aid Society.

An appropriate order will this day be entered in accordance with this opinion.