Kurt W. EHLERT, Plaintiff,

v.

Lalia M. WARD, Appellant,

v.

HOUSING DEVELOPMENT CORPORA-
TION AND INFORMATION CENTER,
INC., Respondent.

No. 61109.

Supreme Court of Missouri,
En Banc.

Oct. 19, 1979.

Rehearing Denied Nov. 14, 1979.

Richard F. Halliburton, Legal Aid of Western Missouri, Kansas City, for appellant.

James M. Ramsey, John F. Daniels, III, Kansas City, for respondent.

Geraldine Azzata, National Consumer Law Center, Boston, Mass., Stephen S. Walters, Effie E. Forde, Legal Services Corp., Washington, D.C., Gayle C. Williams, Richard B. Teitelman, Legal Services of Eastern Missouri, Inc., St. Louis, for amicus curiae.

PER CURIAM.

This case, involving only the cross-claim of Lalia M. Ward (appellant) against her co-defendant, Housing Development Corporation and Information Center, Inc. (HDCIC or respondent), was transferred to this court by our order after opinion by the Court of Appeals, Western District. In addition to supplemental briefs filed by the parties, three amici curiae have filed, with leave, separate briefs in support of appellant's position. We have considered all briefs and the arguments and reach the same conclusion as the court of appeals for essentially the same reasons. Hence, we adopt most of its opinion authored by Jack P. Pritchard, Judge, as follows:

"Appellant sought by cross-claim to rescind her credit transaction with HDCIC consisting of a note secured by a deed of trust on her residence because of alleged violations of the Truth-in-Lending Act, 15 U.S.C.A., § 1601, et seq., and the * * * [Federal Reserve Board Regulation] Z, 12 C.F.R. § 226.1 et seq. Appellant filed a motion for summary judgment on her cross-claim upon a stipulation of facts, in which cross-claim she asked that [the amount] she had paid on the credit transaction be returned to her; that HDCIC be ordered to cancel the deed of trust; that she be given a judgment for $1,000, plus costs and reasonable attorney's fees as provided by the Act. The trial court denied her requested relief, * * * entered judgment for HDCIC.

"The action began as a suit by Ehlert against appellant for the balance due him for repairing her residence. * * * After jury verdict against appellant on Ehlert's claim, and an abandonment of her appeal [from that judgment], that controversy was compromised, according to the briefs.

"The stipulations of fact entered into by appellant and HDCIC are these: The note given by her to HDCIC was for $3,990, plus $564, obligating her to pay $4,554 in 120 monthly installments of $37.95 each. The note was secured by a deed of trust upon appellant's residence. The purpose of the extension of credit was to finance $3,930

residential improvement for appellant. The note and deed of trust constituted a 'consumer credit' transaction, and HDCIC is a 'creditor' as defined in the Consumer Protection Act, and Regulation Z, which apply to the transaction here. That a 'Truth-in-Lending Disclosure Statement' was given appellant on June 27, 1974 (the date of the note and deed of trust), in which the following terms are typed and printed in capital letters: 'AMOUNT FINANCED; FINANCE CHARGES; ANNUAL PERCENTAGE RATE; TOTAL NUMBER OF PAYMENTS; LATE PAYMENT CHARGE; MORTGAGE CLOSING COSTS; ESCROW AMOUNT; SECURED LOANS; BORROWERS; and APPLICATION NO.' The 'Truth-in-Lending Disclosure Statement' does not contain the term 'Total of Payments' nor any similar disclosure of the sum of monthly periodic payments scheduled to repay the indebtedness. If that disclosure had been made, the figure would have been $4,554.00. The $3,990 typed in the block next to the term 'Amount Financed' in the disclosure statement includes $60.00 'Mortgage Closing Costs', and $3,930, home improvement contract price, neither of which are part of the finance charge, and both were paid to appellant's account or to another person on her behalf. The disclosure statement did not individually itemize what charges and costs were included in the 'Amount Financed.' On June 27, 1974, HDCIC gave appellant a Notice of Opportunity to Rescind on a separate sheet of paper, typed and printed in letters less than 12 point type and not in bold-faced print. On October 27, 1976, appellant sent HDCIC a 'Notice of Election to Rescind Transaction', with a letter to the same effect, declaring that the June 27, 1974, consumer credit transaction 'to be rescinded, demanding return of all money paid to defendant HDCIC pursuant to the transaction, demanding cancellation of the Deed of Trust and tendering back the principal balance of the loan upon timely compliance with the above two demands.' On October 29, 1976, HDCIC acknowledged receipt of the notice and letter and stated that it did not consider the rescission effective. Appellant has since made her monthly payments into a special fund set up by her attorney and is current in her payments.

■ "There are here several violations of the provision of Regulation Z. First, 12 C.F.R. § 226.6(a), requires that where the terms 'finance charge' and 'annual percentage rate' are required to be used, they shall be printed more conspicuously than other required terminology. According to the stipulation of facts and photocopies of the documents, these terms were not printed more conspicuously than others. Although technical, these were violations of the Truth-in-Lending Act, which gave rise to appellant's right to rescind the credit transaction. See *Powers v. Sims & Levin Realtors*, 396 F.Supp. 12, 19[7] (E.D.Va.1975), where the court held that underlining the capitalized letters 'finance charge*s*' and 'annual percentage rate' on the disclosure statement did not comply with the regulation's requirement that the terms be *printed* more conspicuously than those used for any other disclosures. The court also held that pluralizing 'Total Finance Charges' resulted in a failure to state the total amount of finance charge using the term 'finance charge' which was a violation of 12 C.F.R., § 226.8(d)(3). Note that here the term 'FINANCE CHARGE*S*' was used, thus implying that there was more than one such charge.

■ "Nowhere on the disclosure statement is there the term 'total payments' or any figures representing that amount. This is a violation of 12 C.F.R., § 226.8(b)(3).

■ "The 'amount financed' is shown to be $3,990, which consists of the home improvement contract price, plus the total of mortgage closing costs shown above it of $60. The amount financed does not reflect as to what is included, i. e., the $3,930 contract price and the mortgage closing costs. A similar omission was held to be violative of 12 C.F.R., § 226.8(d)(1) in *Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir. 1976) (Aff'd on rehearing, [5 Cir.,] 552 F.2d 1142). See also, *Liner v. Aetna Finance Co.*, 555 F.2d 1241 (5th Cir. 1977).

"The blank providing that the date of monthly payments other than the first is not filled in. This is violative of 12 C.F.R. § 226.8(b)(3), requiring that 'due dates or periods of payments scheduled to repay the indebtedness' be disclosed.

"The failure to provide in 12 point type a notice of opportunity to rescind the transaction, as required by 12 C.F.R., § 226.-9, is a violation, it being admitted by respondent that the notice given (although in the words of the regulation) is in type of less than 12 points.

"The purpose of the Truth-in-Lending Act is declared by Congress as set forth in 15 USCA § 1601(a): ' * * * It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, * * *.' The statute is remedial and should be construed liberally, *Johnson v. McCrackin-Sturman Ford*, 527 F.2d 257 (3rd Cir. 1975), and in favor of the consumer, *Sellers v. Wollman*, 510 F.2d 119 (5th Cir. 1975). It was said in *Pennino v. Morris Kirschman & Co., Inc.*, 526 F.2d 367 (5th Cir. 1976), that Congress did not intend creditors to escape liability where only technical violations of the subchapter were involved (as here). Under the facts as stipulated, and the foregoing cases, appellant was entitled to rescind the credit transaction, and the trial court erred in not granting her the requested relief of rescission, including the return of all monies paid by her to respondent and the cancellation of the promissory note and the deed of trust upon her property.

"The matters remain, however, of whether appellant, under the facts, is entitled to retain the principal proceeds of the loan under 12 C.F.R. § 226.9(a); and 15 USCA, § 1635, or whether she must make a tender of it as a condition to the relief by way of rescission. In *Johnson v. United Rys. Co. of St. Louis*, [227 Mo. 423,] 127 S.W. 63, 71 (Mo.1910), the court said, 'It is clear that rescission looks to restoring the status quo. In rescission payments made and benefits conferred must be returned. * * * A specific performance is somewhat of grace, the reciprocal remedy of rescission is also administered by the exercise of a just and sound discretion, precisely as is injunction.' In *Githens v. Butler County*, [350 Mo. 295,] 165 S.W.2d 650 (Mo. 1942), where the court set aside a deed to a county judge's wife, the court said, page 653 [9, 10], 'But when the purpose of the action or cross-bill is cancellation it is not a condition precedent to the party's right to maintain the action that he tender into court the consideration he has received if he offers, in his petition, to make restitution or put the other party in status quo. The condition precedent is upon the granting of the relief demanded and the court has the power to adjust the equities of the case and impose such terms as may be proper. (Citing authority).' Thus, it is clear in Missouri that rescission is of equitable cognizance. The federal courts have applied a requirement of tender of consideration received to an obligor who is entitled to rescission by reason of violations of the Truth-in-Lending Act and Regulation Z. In *Palmer v. Wilson*, 502 F.2d 860 (9th Cir. 1974), there was an issue of conditioning the relief of a grant of rescission upon the debtor's tendering the principal of the loan he had received. The court said, page 862[4], 'In *Eby v. Reb Realty, Inc.*, supra [495 F.2d 646 (9th Cir. 1974)], we recognized that the interaction of the right to rescission and the civil penalty provision * * * can sometimes result in an unduly harsh penalty for violations of the Truth-in-Lending Act. This is particularly true where, as appears to be the case here, the decree granting rescission does not condition the relief upon the debtor's restoration of consideration, the creditor is reduced to the status of an unsecured creditor, and the debts are judgment proof.' (This is because 15 USCA 1635(b) requires the creditor within 10 days of the debtor's notice of rescission, *first* to return to him money or property given, and upon the creditor's performance of his obligations the debtor shall return the property received by him.) The *Palmer* court went on to say,

'[W]hen an obligor seeks both to rescind and to recover statutory penalty and attorney fees, the district court has equitable power to grant both forms of relief; the court may condition the granting of rescission on the debtor's compliance with the court's order to tender to the creditor the principal of the loan that the debtor has received.' Note also the concurring opinion in *Palmer* to the effect that if rescission is demanded and effectuated without litigation, the debtor is required to return the property or its reasonable value to the creditor, indicating a clear Congressional intent that there not be a complete windfall to the * * * [debtor]. See also *LaGrone v. Johnson*, 534 F.2d 1360[5, 6] (9th Cir. 1976); *Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935, 944 (9th Cir. 1975); and note in this connection *Powers v. Sims & Levin Realtors*, 542 F.2d 1216 (4th Cir. 1976).

"Appellant relies heavily upon *Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974). There, Sosa sued both Fite, the siding contractor and Tropical, both of whom were statutory creditors. Sosa offered to return the siding to defendants, it being shoddily installed, but the offer fell upon deaf ears, and they never did offer to rectify the situation. There the court refused to require Sosa to return the property or its reasonable value as a condition to relief as was decreed by the trial court. Here, appellant never did make her contractor, Ehlert, a party to the rescission suit. Her counter-claim against him was basically for breach of contract, and she lost that matter before a jury. Upon receipt of the notice of rescission, respondent replied that it did not consider the rescission effective, and further advised appellant's counsel that a review of the forms and procedures used by HDCIC indicates that it has substantially complied with all of the terms and provisions of the Truth-in-Lending Act, and 'Accordingly, HDCIC is of the belief that Ms. Ward has no right to rescind the transaction at this time.' HDCIC also noted the litigation pending between Ehlert and appellant, its own escrow holding, and the fact that if it honored the request for rescission, it would be exposing itself 'to certain liabilities as relates to any claims Mr. Ehlert might have. As you can see, the only way that HDCIC can fully resolve all of these issues is to proceed with the pending litigation and obtain a judicial determination of the rights and interest of all the parties in this matter.' Appellant's cross-claim was thereafter filed on December 17, 1976, thus thrusting the matter into court for a judicial determination of the alleged violations of the Act, respondent having the right to pursue that determination. These facts distinguish the *Sosa* case, which granted rescission to Sosa without a return of the property received by her upon facts showing the contractor-creditor defendant had not performed his contract, and neither defendant ever acknowledged Sosa's request for rescission, there being also flagrant lack of disclosure of items required by the Act.

■ "Inasmuch as there were substantial violations of the Act, although technical in nature, appellant is entitled to the penalty of 15 USCA § 1640(a)(2)(A)(i). That entitlement is not foreclosed by appellant's election to pursue rescission under § 1635, as contended by respondent. That issue was ruled in *Eby v. Reb Realty, Inc.*, 495 F.2d 646 (9th Cir. 1974). See also *Palmer v. Wilson*, supra; *Sellers v. Wollman*, supra. The $1,000 penalty sought here is less than twice the amount of the finance charge, and is allowable under § 1640.

■ "The last question is whether appellant is entitled to an allowance for attorney's fees. She was and is represented by the Legal Aid of Western Missouri, the counsel of which are paid by various federal, state and local grants so that indigent parties, such as appellant, may have legal representation without cost. Several federal cases have allowed attorney's fees to consumers even though they were represented by legal services offices upon the ground that the Act does not make the award contingent upon the plaintiff's obligation to pay her attorney or whether a fee was in fact charged. *Manning v. Princeton Consumer Discount Co., Inc.*, 533 F.2d 102, 106[6] (3rd Cir. 1976); *Sellers v. Wollman*,

supra; *Campbell v. Liberty Financial Planning, Inc.*, 422 F.Supp. 1386 (D.C.Neb.1976); *Gillard v. Aetna Finance Co., Inc.*, 414 F.Supp. 737 (E.D.La.1976); *Doggett v. Ritter Finance Co. of Louisa*, 384 F.Supp. 150 (W.S.[D].Va.1974) [modified on other grounds, [528] F.2d 860]; and *Jones v. Seldon's Furniture Warehouse, Inc.*, 357 F.Supp. 886 (E.D.Va.1973). The latter case sets forth reason why attorney's fees should be allowed even though the services are rendered through a legal aid society, but they are not persuasive to this court. In *Hannon v. Security Nat. Bank*, 537 F.2d 327 (9th Cir. 1976), the court observed that the purpose behind granting attorney's fees is *to make a litigant whole* and to facilitate private enforcement of the Act." Because appellant has not paid or become obligated to pay attorney fees to the Legal Aid of Western Missouri, an award of attorney fees to her is not required to make her whole. An award to her would impose a penalty on respondent so that she might receive an unjust enrichment. Amici suggest that attorney fees be awarded to appellant's attorneys; not to appellant. This would, of course, eliminate unjust enrichment of appellant. However, the statute (15 U.S.C.A. § 1640(a)(3)) provides that the potential liability of the creditor for attorney fees is to the debtor; not to the debtor's attorney. Moreover, the attorneys are not parties to this suit; they sought no relief other than for their client, and a judgment in their favor for fees would be beyond the scope of the pleadings and void.

The judgment of the trial court is reversed with directions as to: (1) rescission of the contract between appellant and respondent; and (2) allowance of the statutory penalty. It is affirmed as to the denial of attorney fees. The trial court is, accordingly, directed to enter judgment on the cross-claim in favor of appellant and against respondent as follows: (1) rescind the contract or "credit transaction" between these parties, (2) for $1,000.00 as statutory penalty, (3) for the costs; all subject to and on these conditions: first, that the court determine and respondent pay into the registry of the court for the benefit of appellant all funds paid to it by appellant on account of their contract, plus $1,000.00 awarded as penalty; second, that appellant pay into the registry of the court for the benefit of respondent $3,990.00, the principal of the loan made to her by respondent; third, that the clerk of the court disburse to appellant the sum so deposited for her benefit and, at the same time, disburse to respondent the sum so deposited for its benefit; fourth, that appellant satisfy the record of the judgment at the time of receipt of the funds disbursed to her; and fifth, that respondent immediately thereafter cancel and deliver to appellant, or her authorized representative, her note, and satisfy the record of the deed of trust held by it as security for appellant's note, and file with the clerk proof of such satisfaction.

DONNELLY, RENDLEN, and WELLIVER, JJ., and FINCH and HENLEY, Senior Judge, concur.

SEILER, J., concurs in part and dissents in part in separate opinion filed.

MORGAN, J., concurs in separate concurring and dissenting opinion of SEILER, J.

BARDGETT, C. J., not sitting.

HIGGINS, J., not participating because not a member of the court when cause was submitted.

SEILER, Judge, concurring in part and dissenting in part.

I concur in the principal opinion except as to that part which denies appellant attorney's fees. The clear language of the Truth in Lending Act directs that "any creditor who fails to comply with any requirement . . . is liable . . . in an amount equal to the sum of [actual damages and in individual actions twice the finance charges and] . . . . (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, *together* with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3) (1976) (emphasis added). Just last year, in a case dealing with attorney's fees in civil rights

actions, the United States Supreme Court stated that this section of the Truth in Lending Act made fee awards "mandatory for prevailing plaintiffs."[1] *Christianburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 415, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

The majority opinion cites *Hannon v. Security National Bank*, 537 F.2d 327 (9th Cir. 1976) as authority for denying attorney's fees to successful litigants who are represented by legal aid societies. In *Hannon*, however, the litigant (a credit card holder) was a law school graduate who was not licensed to practice law, but who successfully represented himself. No attorney had been retained and it was for that reason no attorney's fee was allowed. This is much different from the present case. The Ninth Circuit stated the issue in *Hannon* as follows:

> "We agree that the statute should be liberally construed to encourage private enforcement. [Citations omitted.] However, the question before us is whether that liberal interpretation should be extended to allow recovery of attorney's fees when no attorney has been retained."

537 F.2d at 328. In fact, *Hannon* distinguishes the very different case presented by plaintiffs who are represented by legal aid societies and discussed the cases which have awarded fees directly to legal aid societies. The *Hannon* court noted that

> "The reasoning behind these cases is that where the assistance of an attorney is a practical necessity, Congress did not intend that vindication of the rights guaranteed by statute depend upon plaintiff's

having economic resources to retain an attorney or else being compelled to seek out charitable assistance. *The payment is made not to the litigants, but directly to the attorney as reimbursement for services actually rendered."*

537 F.2d 328–29, n. 1 (emphasis added). Clearly, the *Hannon* decision is distinguishable on the facts and has no application to the type of case before us.

The majority opinion dismisses as "unpersuasive" the dozens of cases directing that attorney's fees be paid to legal aid societies representing successful plaintiffs in Truth in Lending cases. "[P]laintiffs should not be denied attorney's fees because their attorney was employed by a legal aid society. *Section 1640(a)(2) directs their award, and such an award is not contingent upon an obligation to pay an attorney, or the fact that no fee was charged." Sellers v. Wollman*, 510 F.2d 119, 123 (5th Cir. 1975) (emphasis added). A creditor who fails to provide the information required under the act "is liable 'for a reasonable attorney's fee,' " and the "fee may be awarded to a legal services office." *Manning v. Princeton Consumer Discount Co.*, 533 F.2d 102, 106 (3rd Cir.), *cert. denied*, 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976). "The fact that plaintiff's counsel is employed by a Legal Aid Society does not affect the award of attorney's fees." *Campbell v. Liberty Financial Planning, Inc.*, 422 F.Supp. 1386 (D.Neb.1976). Twenty-eight of twenty-nine federal courts dealing with a prevailing plaintiff represented by a legal aid society, including three federal circuit court of appeals, have awarded attorney's fees to the legal aid society.[2] The twenty-ninth feder-

---

1. The Supreme Court listed the following statutes as providing for a mandatory award of attorney's fees to prevailing plaintiffs: Clayton Act, 15 U.S.C. § 15 (1976): Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b) (1976); Packers and Stockyards Act, 7 U.S.C. § 210(f) (1976); *Truth in Lending Act*, 15 U.S.C. § 1640(a) (1976); and Merchant Marine Act of 1936, 46 U.S.C. § 1227 (1976). 434 U.S. at 415 n.5, 98 S.Ct. 694 (emphasis added).

2. *See, e. g. Manning v. Princeton Consumer Discount Co.*, 533 F.2d 102 (3rd Cir.), *cert. denied*, 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976); *Powers v. Sims and Levins*, 542

F.2d 1216 (4th Cir. 1976); *Sellers v. Wollman*, 510 F.2d 119 (5th Cir. 1975); *Jones v. Allied Loans, Inc.*, 447 F.Supp. 1121 (D.S.C.1977); *Ecenrode v. Household Finance Corp. of South Dover*, 422 F.Supp. 1327 (D.Del.1976); *Gillard v. Aetna Finance Co.*, 414 F.Supp. 737 (E.D.La. 1976); *Doggett v. Ritter Finance Co. of Louisa*, 384 F.Supp. 150 (W.D.Va.1974), *modified on other grounds*, 528 F.2d 860 (4th Cir. 1975); and *Jones v. Seldon's Furniture Warehouse, Inc.*, 357 F.Supp. 886 (E.D.Va.1973). Additional cases are reported in the CCH Consumer Credit Guide, the Poverty Law Reporter and the Clearinghouse Review.

al case, *Engle v. Shapert Const. Co.*, 443 F.Supp. 1383 (M.D.Pa.1978), while denying an award of attorney's fees because of extenuating circumstances in the case, is a district court decision and must be considered of dubious weight because it is in the Third Circuit, which rendered the *Manning* decision, *supra*, one of the strongest decisions upholding the awarding of attorney's fees to legal aid societies. Evidently, for whatever reason, the district court decision was not appealed. One state appellate court has considered this question and it is in accord with the federal cases awarding attorney's fees to legal aid societies. *Robert Levitan & Sons Inc. v. Francis*, 88 Misc.2d 125, 387 N.Y.S.2d 35 (App.Term 1976).

The majority opinion finds that an award of attorney's fees would impose a penalty on respondent and unjustly enrich appellant. If § 1640(a)(3), by making a violator of the Act liable for "the costs of the action, together with a reasonable attorney's fee", imposes a penalty on respondent, it is at the direction of Congress in the clear language of the Act. Statutory awards of attorney's fees to successful plaintiffs are meant to "deter the defendant and others like him from the wrongful action and to induce settlement in future cases without the necessity of resorting to the courts." Note, *Awards of Attorney's Fees to Legal Aid Offices*, 87 Harv.L.Rev. 411, 417 (1973). The majority opinion frustrates the purpose of the statutory remedy afforded successful plaintiffs. As to the charge of unjust enrichment, the cases discussed above require that attorney's fees be paid directly to the legal aid society and, therefore, appellant will not be unjustly enriched. Moreover, federal regulations require that when a legal fee is awarded in a case represented by a legal aid society receiving federal funding, the legal fee "shall be remitted promptly" to the legal aid society. 45 C.F.R. § 1609.5(b) (1978). Legal Aid of Western Missouri receives substantial federal funding and therefore this federal regulation requires appellant in any event to remit

awarded legal fees to Legal Aid. If the majority believes, as it states above, that because the attorneys are not parties to the suit that an award of attorney's fees cannot be made to Legal Aid of Western Missouri directly, then the Court may order that appellant pay the fees to Legal Aid. The majority opinion already orders appellant to pay funds into the registry of the trial court. An order can be written to require appellant to pay the attorney's fees into the registry of the trial court and that the clerk of the court disburse to Legal Aid the sum so deposited for its benefit.

Finally, what the majority opinion overlooks is that a refusal to award attorney's fees to appellant *unjustly enriches respondent.* The respondent, having violated the statute is required by § 1640(a)(3) to pay the costs of the action and reasonable attorney's fees. The majority opinion indicates that violators of the statute will be relieved of part of this statutory liability if they are fortuitous enough to be sued by an indigent plaintiff who must turn to a legal aid society for representation. The majority opinion tends to frustrate the very important framework of private enforcement of the Act. The attorney's fee provision in the Act represents a congressional plan of private enforcement and an acknowledgement of the benefit to the public derived by successful litigants. *Ratner v. Chemical Bank New York Trust Co.*, 329 F.Supp. 270, 280–81 (S.D.N.Y.1971). The majority opinion does not afford a successful litigant represented by a legal aid society the full scope of remedies provided by the Act. In relieving respondent of the statutory liability for attorney's fees, the majority opinion penalizes the legal aid society and its indigent clients by requiring them to absorb the cost of enforcing the statute. The legal services were not "free" from the point of view of Legal Aid of Western Missouri; they were obtained at the cost of decreasing the services otherwise available for other indigent clients. *See generally, Awards of Attorney's Fees to Legal Aid Offices, supra,* 87 Harv.L.Rev. 419–421. An award of attor-

ney's fees in this case would reimburse those actually burdened by this suit by restoring displaced legal services to indigent clients who otherwise would have received them. Moreover, legal aid societies in Missouri will be less inclined to take suits under the Truth in Lending Act if they are denied the statutory award of attorney's fees otherwise available to counsel for a prevailing plaintiff. The congressional design for private enforcement of the Act, at the expense of the violators and without regard to the economic resources of the plaintiff, is not followed by the majority opinion. I respectfully dissent in this regard.