Leon GILLARD and Lula Gillard

v.

AETNA FINANCE COMPANY, INC.

Civ. A. No. 75–1042.

United States District Court,
E. D. Louisiana.

March 19, 1976.
Supplemental Memorandum Opinion
May 7, 1976.

Kenneth J. Berke, New Orleans, La., for defendant.

## MEMORANDUM OPINION

BOYLE, District Judge:

The plaintiffs, Leon and Lula Gillard, instituted this action pursuant to Section 130 of the Consumer Credit Protection Act of 1968 (hereinafter Act), 15 U.S.C. § 1601 et seq., popularly referred to as the Truth in Lending Act, and Regulation Z, 12 C.F.R. § 226.1 et seq., promulgated by the Board of Governors of the Federal Reserve System (hereinafter Board) in accordance with 15 U.S.C. § 1604.

It is alleged in the complaint that on or about July 22, 1974, the plaintiffs refinanced with the defendant, Aetna Finance Company, Inc. (hereinafter Aetna), a loan previously made and that Aetna failed to make the necessary disclosures required by the Act.

Aetna denies that it violated any of the Act's disclosure requirements. Alternatively, it contends that any violation found to exist was not intentional and resulted from a *bona fide* error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

By agreement of counsel, the case was submitted to the Court for adjudication on stipulation of facts, exhibits, affidavits and memoranda.

Jurisdiction is conferred by 15 U.S.C. § 1640(e) and venue is properly laid in the Eastern District of Louisiana.

It is undisputed that Aetna is a "creditor" and that the parties entered into a "consumer credit" transaction within the meaning of the Act. Aetna was required, therefore, to comply with its disclosure provisions. The plaintiffs claim that it failed to do so and assert no less than nine violations.[1]

## I.

The plaintiffs take the position that the absence of one of their signatures on

James W. Blackman, New Orleans, La., for plaintiffs.

---

[1]. *See* Record, Document No. 15, Stipulation No. VIII(a)–(i).

the "Borrower's Copy"[2] of the disclosure statement constitutes a violation of the Act. In that Leon Gillard's signature does appear in the election of insurance section of the copy, although the form instructed him not to sign, it could be presumed that the plaintiffs are referring to the absence of a place on the borrower's copy for the borrower to indicate receipt of a copy of the disclosure statement prior to consummation of the transaction.

■ The plaintiffs have cited no authority, nor can we find any, in support of their position. There is no requirement that a customer sign the disclosure statement itself evidencing that he has received a copy. *See* Federal Reserve Board Advisory Letters Nos. 125 and 333 of September 26, 1969 and May 25, 1970, *quoted in,* CCH Consumer Credit Guide ¶ 30,173 and 30,388.

■ This acknowledgment merely creates a rebuttable presumption of delivery, for the creditor's benefit, according to the terms of 15 U.S.C. § 1635(a). If it is not necessary for the original to contain such an acknowledgment, there can be no such requirement with respect to the copy.

■ Further, if the plaintiffs are claiming a violation because the form instructed them not to sign the copy, in the election of insurance section, this contention is without merit. The copy which must be furnished the consumer need not contain the borrower's written election of insurance coverage required by 15 U.S.C. § 1605(b)(2) and 12 C.F.R. § 226.4(a)(5)(ii). *Burton v. G.A.C. Finance Co.,* 525 F.2d 961 (5 Cir. 1976).

## II.

The plaintiffs contend that Aetna failed to disclose the costs of insurance clearly, conspicuously and in a meaningful sequence. In particular, it is charged that:

(a) the defendant failed to provide the plaintiffs with the option of purchasing health and accident insurance by itself and without the purchase of credit life insurance, although the costs of both types of insurance are separately disclosed;

(b) the defendant failed to disclose the combined costs of both credit life and health and accident insurance; and

(c) the defendant failed to disclose the insurance costs in close proximity to the place on the disclosure statement where the borrowers were to elect to purchase insurance.

Because of these failures, it is argued that the insurance costs had to be included in the finance charge, which they were not, thereby rendering inaccurate Aetna's disclosure of the finance charge, amount financed and annual percentage rate.

15 U.S.C. § 1631(a) states that a creditor must disclose the information required by the Act clearly and conspicuously, in accordance with the Board's regulations. 12 C.F.R. § 226.6(a) adds the requirement that the necessary disclosures be made in meaningful sequence.

According to 12 C.F.R. § 226.4(a)(5), charges or premiums for credit life, health and accident insurance must be included in the finance charge disclosed to the consumer unless:

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific . . . affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

It is true that Aetna did not offer health and accident insurance separately as it provided only the following options: (1) credit life insurance; (2) credit life and health and accident insurance; and (3) neither credit life nor health and accident insurance.[3]

---

2. See Record, Document No. 15, ¶ VIII(a) and Exhibit # 2.

3. This third alternative negates the plaintiffs' contention that health and accident insurance was required by the defendant as a condition of the loan.

■ It is also true, however, as the defendant points out and the plaintiffs now concede,[4] that a creditor is not compelled to provide any particular insurance option to the customer, nor is he prohibited from offering one type of insurance only in connection with the purchase of another type. *See Doggett v. Ritter Finance Co.,* 384 F.Supp. 150 (W.D.Va.1974), *rev'd on other grounds,* 5 CCH Consumer Credit Guide ¶ 98,500 (4 Cir. December 19, 1975); *Jones v. Community Loan & Investment Corp.,* 5 CCH Consumer Credit Guide ¶ 98,787 (N.D.Ga. March 22, 1974), *rev'd on other grounds,* 5 CCH Consumer Credit Guide ¶ 98,485 (5 Cir. January 30, 1976).

The plaintiffs had initially relied on *Hall v. Sheraton Galleries,* 5 CCH Consumer Credit Guide ¶ 98,737 (N.D.Ga. March 21, 1974), for the proposition that Aetna was required to provide the option of purchasing health and accident (disability) insurance alone. *Hall* is distinguishable, however, as that "case" involved property insurance and the disclosure patterns for such insurance are different and governed by a separate regulation. *See* Federal Reserve Board Advisory Letter No. 843 of September 19, 1974, by Jerauld C. Kluckman, Chief, Truth in Lending Section, *quoted in,* CCH Consumer Credit Guide ¶ 31,165.

■ The defendant's failure to provide the option of purchasing only health and accident insurance, therefore, is not in and of itself a violation.

Because health and accident insurance could not be purchased separately, it is also argued that Aetna was required to disclose the combined costs of both credit life and health and accident insurance. For authority, the plaintiffs cite the district court's opinion in *Doggett v. Ritter Finance Co.,* supra, wherein it was found that a separate statement of the cost of disability insurance was confusing surplusage since it was not available except in combination with credit life insurance.

The Fourth Circuit disagreed with this portion of the lower court's decision, however, and stated that the itemization rule of 12 C.F.R. § 226.8(d)(1) probably required the separate disclosure of the cost of health and accident insurance. Thus, the court could not fault the defendant for doing what the regulation seemingly required.

Further, according to Federal Reserve Board Advisory Letter No. 843, supra, 12 C.F.R. § 226.4(a)(5) does not require the creditor to disclose the costs of the various combinations of insurance coverage available.

■ We find this approach persuasive. If the borrowers elected to purchase both types of insurance, it would be a simple matter to add the individual costs disclosed. Further, we agree with the Fourth Circuit's analysis of the requirements of 12 C.F.R. § 226.8(d)(1). Disclosure of the combined costs must be considered additional information which Aetna could have, but was not compelled to, disclose. *See* 12 C.F.R. § 226.6(c). Standing alone the defendant's failure to disclose the combined costs of insurance options available is not a violation.

Finally, the plaintiffs claim that the defendant's insurance authorization disclosure was deficient because the disclosed costs were not in close proximity to the place on the form where the borrowers were to indicate their desire to elect coverage.

The disclosure statement[5] contained a separate boxed section at the bottom of the page wherein the following language, in pertinent part, appeared:

CREDIT LIFE OR HEALTH AND ACCIDENT INSURANCE is optional and it is not required as a condition to the granting of this loan. If borrower elects to have the Lender obtain Credit Life or Health and Accident insurance coverage, the cost of such insurance is the charge(s) therefor stated above. . . . No charge is made for this insurance and none is provided unless the borrower to

4. *See* Record, Document No. 18.

5. *See* Record, Document No. 15, Exhibit # 1.

be insured signs the appropriate statement below.

Above, near the top of the form, in a box labeled "Credit Life Ins. Chg.", $25.92 is shown. In the next box labeled "H. & A. Ins. Chg.", $38.88 appears.

The plaintiffs cite *Pollock v. Avco Financial Services, Inc.,* 5 CCH Consumer Credit Guide ¶ 98,766 (N.D.Ga. July 1, 1974), and *Phillips v. Termplan of Atlanta, Inc.,* 5 CCH Consumer Credit Guide ¶ 98,841 (N.D.Ga. November 6, 1973) for the proposition that all insurance disclosures must be complete within themselves and that the defendant may not incorporate the costs of insurance by reference to figures at the top of the disclosure statement.

In *Simmons v. American Budget Plan, Inc.,* 386 F.Supp. 194 (E.D.La.1974), we declined to follow the *Phillips* decision because the result reached in *Phillips* was not compelled by the Act, regulations or Board interpretations. We feel no differently now and because *Pollock* relied on *Phillips* for authority, we decline to follow that decision also.

■ There can be no doubt that inclusion of the premiums in the insurance authorization section itself is the preferable method of cost disclosure and perhaps creditors, in an attempt to avoid or reduce the possibility of litigation in this area, should utilize this arrangement. It is not the only acceptable method, however, *see* Federal Reserve Board Advisory Letter No. 408 of September 25, 1970, by Tynan Smith, Assistant Director, *quoted in,* CCH Consumer Credit Guide ¶ 30,586, and because there is no hard and fast rule that can be applied, liability will depend upon whether or not the particular method employed in this case complies with the requirements of 15 U.S.C. § 1631(a) and 12 C.F.R. § 226.6(a).

The cost disclosure made by Aetna[6] conforms substantially to that which we considered in *Simmons.* There, the consumer was to elect to purchase insurance at the "cost . . . indicated above," which

was listed as $225.00 in a box labeled "Credit Life Insurance Charge." 386 F.Supp. at 199.

■ We determined that the form used in that case was sufficiently clear so that a minimum possibility of confusion existed and that the arrangement was in accordance with the statutory requirements.

That is also our finding in this case. Further, we find no violation when all of the alleged insurance disclosure deficiencies, heretofore individually examined, are considered together or in conjunction with each other.

### III.

The plaintiffs contend that the amount of actual cash which was to be given to the plaintiffs should have been disclosed.

15 U.S.C. § 1639(a), in pertinent part, states that:

Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

(1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).

12 C.F.R. § 226.8(d)(1) provides that the creditor must include in the "amount financed" disclosure, "[t]he amount of credit . . . which will be paid to the customer or for his account or to another person on his behalf, including all *charges, individual-*

---

**6.** As was stated previously in the text, insurance coverage was to be elected at the "charge(s) therefor stated above." In a box near the top of the form labeled "Credit Life Ins. Chg.", $25.92 is shown and in another box labeled "H. & A. Ins. Chg.", $38.88 is listed.

*ly itemized*, which are included in the amount of credit extended but which are not part of the finance charge." (Emphasis added).

■ In *Simmons v. American Budget Plan, Inc.*, supra, cited by the plaintiffs in support of their contention, we did say that the defendant in that case "failed to individually itemize the various elements of the amount financed . . . ." 386 F.Supp. at 198. When this statement is read in context, however, it is clear that we were referring to those elements of the amount financed which the defendant was required to individually itemize, i. e., "the notarial fee and fees for certificates and recordation in connection with the second mortgage by which the loan was secured." *Id.*

■ Thus, our *holding in this case*, that Aetna did not commit a violation by its failure to individually itemize the amount financed as represented by the balance due on the original loan being refinanced ($886.75) and the amount of cash to be received ($24.94), is no deviation from our decision in *Simmons*. We agree with the defendant that Section 226.8(d)(1) requires only that "charges" be individually disclosed as component parts of the "amount financed." Since the amount in question, $24.94, cannot be considered a "charge", individual itemization of said amount was not necessary.

### IV.

Although it is stipulated that the finance charge consisted of interest only,[7] the plaintiffs argue that itemization was required by 12 C.F.R. § 226.8(d)(3) which mandates disclosure of "the total amount of the finance charge, with [a] description of each amount included . . . ."

---

7. *See* Record, Document No. 15, Stipulation No. V.

8. The plaintiffs also rely on Judge Heebe's decision in *Meyers v. Clearview Dodge Sales, Inc.*, 384 F.Supp. 722 (E.D.La.1974). A reading of that opinion demonstrates, however, that the court found a finder's fee involved in that transaction, with the result that the finance

A literal reading of that regulation would seem to support this view and at least two courts have adopted this approach. *See Ives v. W. T. Grant Co.*, 522 F.2d 749, 761 (2 Cir. 1975); *Johnson v. Associates Finance, Inc.*, 369 F.Supp. 1121, 1122 (S.D.Ill.1974).[8]

These cases were decided, however, before 12 C.F.R. § 226.820 was promulgated. This official Board Interpretation provides:

A description of the amounts included in the finance charge is necessary to carry out the purposes of the Act only when the total charge includes more than one element. Therefore, where only a single type of charge comprises the finance charge, disclosure of the total dollar amount of such charge, using the term "finance charge" complies with the requirements of § . . . 226.8(d)(3), and there is no further requirement under . . . [that section] that the single type of charge be otherwise identified or described.

CCH Consumer Credit Guide ¶ 3568 (November 21, 1975).

■ Although not binding, this opinion is entitled to great weight because it represents the "experience and informed judgment" of an agency to which Congress has delegated substantial authority. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Thomas v. Myers-Dickson Furniture Co.*, 479 F.2d 740 (5 Cir. 1973). We agree with the Board's analysis.

■ Our finding in this case, that Aetna did not commit a violation by its failure to disclose that the finance charge was composed only of interest, is also not inconsistent with our previous decision in *Simmons v. American Budget Plan, Inc.*, supra. In *Simmons*, we determined that the defendant's insurance disclosures were inadequate

charge consisted of more than one element. The language favorable to the plaintiffs' position must, therefore, be considered *dicta*. Furthermore, in a ruling on a motion for summary judgment, Judge Heebe has subsequently adopted the position we take in this case. *See Bond v. Shape Spa, Inc.*, Civil Action No. 75–3231 (January 21, 1976).

and, as a result, the cost of such insurance had to be included in the finance charge. Therefore, the finance charge was composed of more than one element and 12 C.F.R. § 226.8(d)(3) required that each be individually described.

### V.

■ The plaintiffs further claim that the defendant did not properly identify the security interest retained and the property affected by it, but have not addressed these issues in their memoranda.[9] We will proceed to consider the merits of these claims, however, because there has been no indication that they intended, by this omission, to concede the absence of violation in this area.

12 C.F.R. § 226.8(b)(5) requires that the creditor disclose

[a] description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify.

■ In this case, Aetna disclosed that the loan was secured by "A Chattel Mortgage on all of the Household Goods belonging to the Borrowers located at their address shown above.[10]

This disclosure clearly contains a "description or identification of the type" of security interest held by Aetna, within the meaning of 12 C.F.R. § 226.8(b)(5).

■ Further, we find that the defendant sufficiently notified the plaintiffs of the property which would be subject to the security interest. No further specification was necessary. *See Slatter v. Aetna Finance Co.*, 377 F.Supp. 806 (N.D.Ga.1974), *rev'd on other grounds sub nom., Jones v.*

*Community Loan & Investment Corp.*, 5 CCH Consumer Credit Guide ¶ 98,485 (5 Cir. January 30, 1976); *Doresey v. Termplan, Inc.*, 5 CCH Consumer Credit Guide ¶ 98,691 (N.D.Ga. June 28, 1974); *Kenney v. Landis Financial Group, Inc.*, 349 F.Supp. 939 (N.D. Iowa 1972); Federal Reserve Advisory Letter No. 521 of August 26, 1971, *quoted in,* CCH Consumer Credit Guide ¶ 30,727.

### VI.

Finally, Aetna's disclosure of the rebate method to be used, by reference to the "Rule of 78's," is challenged.

The Act does not expressly require any statement regarding refunds in the event of prepayment. It is provided in the regulations, however, that the disclosure statement shall include "[i]dentification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges . . . ." 12 C.F.R. § 226.8(b)(7).

In an official Board Interpretation of this regulation, it was stated:

Many State statutes provide for rebates of unearned finance charges under methods known as the "Rule of 78's" or "sum of the digits" or other methods. In view of the fact that such statutory provisions involve complex mathematical descriptions which generally cannot be condensed into simple accurate statements, and which if repeated at length on disclosure forms could detract from other important disclosures, the requirement of rebate "identification" is satisfied simply by reference by name to the "Rule of 78's" or other method, as applicable.

12 C.F.R. § 226.818(c).

■ We agree with the Board's reasoning. As the creditor could not accurately explain the method in a simplistic and uncomplicated manner, unsuccessful attempts to do so would confuse the average consumer more than he already is.

---

**9.** The plaintiffs also chose not to present any argument or cite any supporting authority with respect to the first and last alleged violation considered by us.

**10.** *See* note 4 supra.

■ We find, therefore, that Aetna did all that it was required to do by referring to the rebate method as the "Rule of 78's." *See Bone v. Hibernia Bank*, 493 F.2d 135 (9 Cir. 1974) and authorities cited therein.

### VII.

We have determined that the defendant has committed no violations of the Act or regulations.[11] Accordingly, judgment will be entered herein in favor of the defendant, Aetna Finance Company, Inc., and against the plaintiffs, Leon and Lula Gillard, dismissing the complaint with costs.

This opinion shall serve as our findings of fact and conclusions of law.

### SUPPLEMENTAL MEMORANDUM OPINION

The plaintiffs have filed a motion to alter and amend the judgment previously entered herein in favor of the defendant. The motion was heard upon an earlier day and taken under submission after oral argument. Having taken time to consider, we are now prepared to rule and we GRANT the motion for the reasons hereinafter stated.

In support of their motion, the plaintiffs assign the following reasons: (1) 12 C.F.R. § 226.820, as promulgated by the Board of Governors of the Federal Reserve System (hereinafter Board), is invalid because of non-compliance with the Administrative Procedure Act and particularly with 5 U.S.C. § 553;[1] (2) the insurance disclosures were not clear and conspicuous and were misleading in that the customers were lead to believe that health and accident insurance could be purchased separately; and (3) the insurance cost disclosures were not clear and conspicuous and were misleading be-

cause the disclosure statement incorrectly indicated that they would be deducted from the amount financed.

It is argued that 12 C.F.R. § 226.820, which purports to be an interpretation of 12 C.F.R. § 226.8(d)(3), is in fact an amendment to that regulation. As such, it is further argued that the Board did not comply with the Administrative Procedure Act's requirements of prior notice and solicitation of public participation in the rule making process. Apparently, the plaintiffs are not alone in their criticism of the Board's action in this instance. "To remove any uncertainty that may exist regarding this matter, . . . the Board has [now] decided to solicit public comment. . .." and otherwise comply with the requisite formalities. Excerpts from order of February 27, 1976, 41 Fed.Reg. 10078, *quoted in,* 1 CCH Consumer Credit Guide ¶ 3568.

■ We were not aware of this controversy at the time we rendered our opinion. Regardless of the interpretation's validity, however, we believe that itemization is not required in the case of a single-element finance charge. We need not rely on that section to agree with its reasoning.[2]

■ It is also contended that the use of the word "or", in the sentence "credit life *or* health and accident insurance is optional," is confusing and incorrect because health and accident insurance could be purchased only in connection with credit life insurance. We find this contention to be without merit.

When read in context, it is clear that this sentence was meant to convey that insurance of any kind is not required as a condition of the loan. Further, the fact that only credit life insurance could be purchased separately is indicated by the op-

---

11. The result we reach eliminates the need to consider the issue of damages or the defense to liability raised by the defendant.

1. It should be noted at the outset that, shortly after the Board took this action and well in advance of our decision, we afforded the plaintiffs an opportunity to respond to the defendant's memorandum which brought 12 C.F.R. § 226.820 to our attention. *See* Record, Docu-

ment No. 19. For reasons of their own, they chose not or neglected to do so.

2. Furthermore, we choose not to follow *Ives v. W. T. Grant Co.,* 522 F.2d 749 (2 Cir. 1975), to the extent that decision is applicable to a cause of action prefaced solely on a violation of federal law.

tions provided the customer in the insurance authorization section of the form.

With respect to the final argument advanced in support of the motion, there can be no doubt that the defendant's disclosure statement informed the plaintiffs that if coverage was elected, the cost(s) of such insurance would be deducted from the amount financed. It is equally clear that the Fifth Circuit Court of Appeals has recently determined that such a statement has the capacity to mislead or confuse a potential borrower in violation of 12 C.F.R. § 226.6(c). *See Weaver v. General Finance Corp.,* 528 F.2d 589 (5 Cir. 1976).[3] It is the defendant's position, however, that the issue is now being raised for the first time and, consequently, the plaintiffs are precluded from asserting this violation.

It was not contended that the insurance disclosures were defective, in this regard, either in the complaint or in the listing of alleged violations made in response to the defendant's interrogatories. *See* Record, Document Nos. 7 and 11. After it was agreed by counsel to submit this case for adjudication, the parties entered into a joint trial stipulation in which the issues to be decided were delineated. Of the three issues relative to insurance disclosure, two were quite specific and referred to matters other than deduction of the insurance costs from the amount financed.

The remaining issue was phrased in general and all-encompassing terms, to wit: "Whether the insurance disclosures and costs are in meaningful sequence and were disclosed 'Clearly and Conspicuously' as required by the Act." *See* Record, Document No. 15 VIII(c). In the plaintiffs' initial memorandum, to which the defendant had an opportunity to respond, this allegation was clarified to mean that a violation was being claimed because the costs were not

disclosed in close proximity to the place on the form where the borrower was to elect to purchase the insurance. With this addition, the stipulation of issues to be decided conformed with those violations claimed in the plaintiffs' answers to interrogatories.

■ It was not until what was supposed to be the plaintiffs' *reply* memorandum that any reference whatsoever was made to the disclosure deficiency now being asserted and then only in passing without supporting authority. *See* Record, Document No. 18, p. 3.[4] This would not be sufficient to overcome the defendant's objection if it were not for the fact that the stipulation arguably is broad enough to include such an allegation.

■ Justice requires that we not penalize the plaintiffs for the rather inarticulate manner in which this issue was presented by their attorney. Accordingly, we find that the defendant violated 12 C.F.R. § 226.6(c) by making reference, in its disclosure statement, to the fact that the elected insurance cost(s) would be deducted from the amount financed. This is true regardless of whether or not the plaintiffs were actually confused or misled by such information.

■ The defendant contends that 15 U.S.C. § 1640(c)[5] insulates it from civil liability for any violation found to exist. Section 1640(c) is clearly inapplicable. The defendant, we conclude, intended the disclosure statement to contain the language it does contain. The violative language is contained within the printed portions of the disclosure statement itself. Moreover, good faith in and of itself is not a defense, because an error is intentional, within the meaning of the Act, if not clerical in nature. *See Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928, 931 (E.D.La.), *aff'd per*

---

3. This decision was handed down after we had completed our research and did not come to our notice until after our opinion was filed.

4. Some of the issues were not addressed at all by the plaintiffs in their memoranda. *See* Record, Document No. 22, p. 15, n. 9 and accompanying text.

5. "A creditor may not be held liable . . . for a violation . . . if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

*curiam,* 500 F.2d 1182 (5 Cir. 1974) and cases cited therein.

To avoid liability, the defendant also relies on 15 U.S.C. § 1640(f),[6] but has not directed our attention to any rule, regulation or Board interpretation to which it has attempted to conform in drafting the particular language in the disclosure statement which we have found to be misleading. Thus, the defendant has not sustained its burden of proof and, therefore, has not shown that it is entitled to take advantage of the section 1640(f) defense.

15 U.S.C. § 1640(a) provides, in pertinent part,[7] that any creditor who does not satisfy the Act's disclosure requirements is liable in an amount equal to the sum of twice the amount of any finance charge in connection with the transaction, except that the liability shall not be less than $100.00 nor greater than $1,000.00, and the costs of the action, together with a reasonable attorney's fee as determined by the court. Although not specifically prayed for in the complaint, the plaintiffs argue that they should each recover the statutory penalty of twice the finance charge, which in this instance was $317.51.

We do not feel that the facts of this case warrant such an award. It is only when the transaction creates a security interest in the borrowers' principal residence, giving to each of them the right of recission under 15 U.S.C. § 1635, that more than one statutory penalty will be assessed. In that situation, the regulations require the creditor to furnish each borrower with the requisite disclosures. *See* 12 C.F.R. §§ 226.6(e), 226.603; *Powers v. Sims & Levin Realtors,* 396 F.Supp. 12, 24 (E.D.Va.1975); *Simmons v. American Budget Plan, Inc.,* 386 F.Supp. 194, 201 (E.D.La.1974).

In a non-rescindable transaction involving jointly liable debtors, however, the creditor need provide only one borrower with the disclosures mandated by the Act and cannot be held accountable to others for its failure to do so correctly. *See, e. g., Johnson v. McCrackin-Sturman Ford, Inc.,* 381 F.Supp. 153 (W.D.Pa.1974); *St. Marie v. Southland Mobile Homes,* 376 F.Supp. 996 (E.D.La.1974); *Rivers v. Century Finance Co.* (N.D.Ga. June 21, 1974), 5 CCH Consumer Credit Guide ¶ 98,771, as explained in *Simmons v. American Budget Plan, Inc.,* supra. Consequently, the plaintiffs shall jointly recover only $635.02 in damages.

Additionally, the plaintiffs shall recover attorney's fees in the amount of $1,400.00 [8] and costs, despite the fact that their attorney is employed by a legal aid society. *See Sellers v. Wollman,* 510 F.2d 119, 123 (5 Cir. 1975) and cases cited therein.

For the foregoing reasons, the judgment entered herein on March 24, 1976 in favor of defendant shall be set aside and judgment will be entered in favor of the plaintiffs, Leon and Lula Gillard, and against the defendant, Aetna Finance Company, Inc., for damages in the amount of $635.02, with interest at the rate of 7% per annum from the date of judgment until paid, for attorney's fees in the amount of $1,400.00, and for costs.

Our original opinion, as supplemented and amended herein, shall serve as our findings of fact and conclusions of law.

6. This provision exempts "any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board, notwithstanding that after such act or omission has occurred, such rule, regulation, or interpretation is amended, rescinded, or determined by judicial or other authority to be invalid for any reason."

7. The plaintiffs do not seek to recover any actual damages caused by the defendant's failure to comply with the Act.

8. In determining the amount of the fee, allowance has been made for what we estimate to be the additional preparation, necessary to present the motion *sub judice,* which the plaintiffs' counsel has not included in his affidavits. *See* Record, Document Nos. 16 and 18.