Kenneth BINNICK, Plaintiff,

v.

AVCO FINANCIAL SERVICES OF
NEBRASKA, INC., a Nebraska
Corporation, Defendant.

No. CV77–L–63.

United States District Court,
D. Nebraska.

Aug. 18, 1977.

It was described as "Truth-in-Lending Counterclaim against Avco Financial Services of Nebraska, Inc., arising out of Promissory Note dated April 5, 1976," and it was valued at $700.00. In the plaintiff's statement of debts, he listed this note as payable in the amount of $2,880.00. The report of the trustee disclosed that there were no assets over and above the exemptions; a general discharge for a no-asset estate was entered by the court [1] on February 10, 1977. This case was filed on March 4, 1977.

Brian J. Waid, Lincoln, Neb., for plaintiff.

James L. Haszard, Lincoln, Neb., for defendant.

## MEMORANDUM AND ORDER

URBOM, Chief Judge.

The plaintiff has filed a motion to dismiss [counterclaim] or for partial summary judgment, filing 7. This is an action in which the plaintiff seeks to recover statutory damages, costs, and attorney's fees for violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. (hereinafter T.I.L.A.). The defendant has filed a counterclaim, asserting that there is still due and owing the sum of $2,069.94 on the note which is the basis of the plaintiff's T.I.L.A. claim. The defendant seeks either dismissal of the complaint or a setoff against any recovery the plaintiff might establish. The plaintiff's motion seeks dismissal of the counterclaim.

The plaintiff filed a voluntary petition in bankruptcy on November 22, 1976, BK76–L–399, listing this T.I.L.A. claim as an asset under the category "contingent and unliquidated claims of every nature, including counterclaims of the bankrupt or debtor."

## STANDING

By the plaintiff's scheduling of the T.I.L.A. claim on his bankruptcy petition, he gave proper notice to the trustee of such claim. At that time the right of action for it vested in the trustee under either 11 U.S.C. § 110(a)(5) or (6). *In re Dunne*, 407 F.Supp. 308 (U.S.D.C.R.I.1976); *Porter v. Household Finance Corp. of Columbus*, 385 F.Supp. 336 (U.S.D.C.S.D.Ohio 1974). The trustee did not pursue the claim, however, perhaps out of a belief that any recovery on the T.I.L.A. claim would be set off under 11 U.S.C. § 108(a) [2] against the greater debt owed to the creditor, Avco Finance. The result would thus have been that no funds would accrue to the estate, even though the trustee had successfully prosecuted the claim. The trustee's "abandonment" of a claim is necessary to revest title to a claim in the bankrupt. 2 *Remington on Bankruptcy*, § 1147, and 3 *Remington on Bankruptcy*, § 1407. The mere failure to prosecute the claim as of the time of the closing of the estate does not necessarily establish such abandonment. *Stanolind Oil & Gas Co. v. Logan*, 92 F.2d 28 (C.A. 5th Cir. 1937).

1. David L. Crawford, Bankruptcy Judge.

2. 11 U.S.C. § 108 provides:
"(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.
"(b) A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 93 of this title; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy. . . . ."

■ The plaintiff has not included any assertion of such abandonment in his complaint and it seems to be necessary to establish his standing to prosecute this claim. Leave of court will be given the plaintiff to amend his complaint to allege standing by this or some other means.

Assuming this standing hurdle is overcome, the issue is whether a creditor, following discharge of a debt in bankruptcy, may assert the amount due thereon as a counterclaim or setoff to the bankrupt's post-bankruptcy T.I.L.A. suit based on the discharged debt. The issue is evidently of first impression in the federal courts.

## BARRING OF THE PLAINTIFF'S ACTION

This issue is explored in King, "Post-Bankruptcy Suits Against Proving Creditors on Claims Abandoned by the Trustee in Bankruptcy," 37 N.Y.U.L.Rev. 250 (1962). The author argues that Rule 13(a) of the Federal Rules of Civil Procedure, 11 U.S.C. § 108(a) of the Bankruptcy Act, and the doctrine of res judicata combine to bar the bankrupt from asserting his cause of action after the discharge, on the theory that all conflicting claims are required to be asserted in the bankruptcy forum, including the plaintiff's counterclaim to the defendant-creditor's claim. Thus, the bankrupt's T.I.L.A. claim would be merged into the discharge. The author cites *Meacham v. Haley*, 38 Tenn.App. 20, 270 S.W.2d 503 (1954), as having adopted this position, but recognizes that *United States ex rel. Allen Construction Corp. v. Verrier*, 179 F.Supp. 336 (U.S.D.C.Me.1959), runs counter to it. In the latter case, the court refused to find Rule 13(a) applicable to the Bankruptcy Act proceedings, allowing the plaintiff-bankrupt to bring a subsequent suit on the cause of action. The court argued that to hold otherwise would result in a situation where the abandonment of a claim by the trustee would operate to nullify that claim instead of causing reversion in the bankrupt. The court did not discuss the availability to the defendant of a counterclaim for the discharged debt.

The author thus points to a "pressing need" for corrective legislation, which he proposed in the form of an amendment to 11 U.S.C. § 35 to provide that if a debt is discharged in bankruptcy it may be revived and asserted as a setoff in a later independent suit brought by the former bankrupt on a claim which existed at the time of the bankruptcy but which was abandoned by the trustee.

If there had been an "adversary proceeding" in the bankruptcy proceedings, there may be some concern if the bankrupt had not counterclaimed for the T.I.L.A. claim. See Rule 713 of the Rules of Bankruptcy Procedure. There was no such proceeding; furthermore, the plaintiff-bankrupt listed the T.I.L.A. claim as a counterclaim on his petition in bankruptcy. The plaintiff is thus not barred from asserting his T.I.L.A. claim.

Finally, there has been no amendment to the Bankruptcy Act so as to provide for revival of a discharged debt.

## APPROACH OF THE COURT

There are two particular concerns of the court, although they are no doubt intertwined. They are (a): Is there jurisdiction in this court to consider the defendant's counterclaim? and (b): Does the bankruptcy discharge bar the defendant's counterclaim? The precise legal analysis is difficult due to the novelty of the question.

*1. Equitable setoff under § 108(a).*

There are three relevant time periods here during which the plaintiff could have prosecuted his T.I.L.A. claim. The first is at a time before the filing of the petition in bankruptcy. If the plaintiff had done so, the defendant presumably would have counterclaimed for the full balance of the note due. Whether such a counterclaim would have been proper depends on whether the court would find it to be permissive or compulsory under Rule 13(a) of the Fed-

eral Rules of Civil Procedure.[3] Without the compulsory counterclaim designation, there would be no jurisdiction by which the claim could be pursued in federal court. If the court were to conclude that the counterclaim was properly brought, the defendant would recover the amount of the note, less the $1,000.00 for the T.I.L.A. claim and less whatever costs and attorney's fees would be awarded to the plaintiff. If the court were to conclude that the counterclaim could not properly be brought the defendant would still be able to bring a state court action for the amount due on the note.

If the plaintiff waited until he had filed bankruptcy in order to pursue his T.I.L.A. claim, the right to file the claim or prosecute it vested in the trustee, who would decide what action to take. The trustee's suit would also confront the issue of the appropriateness of a counterclaim, as above. Even if the counterclaim were found not to be properly brought, the trustee would still be faced with a setoff for the value of the note in the administration of the bankrupt's estate. 11 U.S.C. § 108(a). By virtue of such a setoff, the recovery on the note would likely cancel out any recovery to the plaintiff on the T.I.L.A. claim.

■ The plaintiff has instead waited until a third possible time period in which to file his T.I.L.A. claim—after the discharge in bankruptcy. The discharge in bankruptcy operates to discharge the debt and to enjoin the defendant from "instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt." The injunctive language is taken from 11 U.S.C. § 32(f)(2) and was first enacted in 1970. It was enacted to "prevent creditors from instituting state court actions in the hope that the bankrupt would ignore the proceedings based on a misplaced reliance on the discharge or due to a lack of funds to defend." *Wood v. Fiedler*, 548 F.2d 216, 219 (C.A. 8th Cir. 1977). Cf. 2 U.S.Code Congressional

and Administrative News, pp. 4156–4157 (1970). I think a fair reading of this section is that it operates to bar any affirmative recovery of the debt as a personal liability of the bankrupt. I do not think that the section prevents the defendant from setting off its claim against the judgment which the plaintiff now seeks, where both claims arise out of transactions that accrued prior to the bankruptcy.

Moreover, it now seems unjust to allow the plaintiff to sue on the T.I.L.A. claim without the burden of the setoff in bankruptcy which his trustee faced in considering whether to pursue the claim. No good policy reason surfaces for leaving the bankrupt in a better position than the trustee to prosecute such a claim. The bankruptcy laws are designed to bring into the estate all items of value which could be distributed to creditors. The setoff provision is the application of an equitable doctrine to the distribution process.

■ The courts have consistently held that the right to a setoff under 11 U.S.C. § 108 is discretionary and the court should be guided by the general rules of equity in exercising this discretion. *In re Diplomat Electric, Inc.*, 499 F.2d 342 (C.A. 5th Cir. 1974). Title 11 U.S.C. § 108(b) limits the application of the setoff provisions where the claim was acquired for use as a setoff. The courts have applied this principle on equitable grounds in cases where the creditor endeavors to "pay himself through the device of setoff by converting the bankrupt's property, particularly at a time when he knows of the bankrupt's insolvency." *Brunswick Corp. v. Clements*, 424 F.2d 673, 676 (C.A. 6th Cir. 1970).

■ Just as the bankruptcy court has the discretion to deny setoff in appropriate cases, so this court has the equitable duty to grant a setoff when a bankrupt seeks to circumvent the burden but seize the benefit of a single transaction. The court has not yet addressed the question of whether the

---

**3.** The law in this district at least is unsettled on this subject. Compare *Ballew v. Associates Financial Services Company of Nebraska, Inc.*, CV75–L–119 (unpublished opinion U.S.D.C.

Neb. March 30, 1976), and *Jones v. Sonny Gerber Auto Sales, Inc.*, 71 F.R.D. 695 (U.S.D.C. Neb.1976).

defendant would in fact have been entitled to a setoff in this bankruptcy proceeding of its claim for the value due on the note against the plaintiff's T.I.L.A. claim. The T.I.L.A. claim and the defendant's counterclaim appear to fall within the concept of mutual debts and credits, as those terms have been defined and interpreted under 11 U.S.C. § 108. See *Libby v. Hopkins*, 104 U.S. 303, 26 L.Ed. 769 (1881); 3 *Remington on Bankruptcy*, §§ 1443–1445.

The plaintiff cites *McCollum v. Hamilton National Bank*, 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819 (1938), for the proposition that setoffs are not appropriate in an action brought by the bankrupt or his trustee to enforce a civil penalty. In that case, the trustee sued to recover for usury by a national bank under 12 U.S.C. § 86; the bank urged that any amount for which it should be held in violation should be set off against the amount owed it by the bankrupt. The court referred to its previous decisions in which it was held that the liability for usurious interest under this statute could only be enforced in an action brought specially and exclusively for that purpose "where the sole issue is the guilt or innocence of the accused, without the presence of any extraneous facts which might confuse the case." 303 U.S. at 247, 58 S.Ct. at 570. Further, the court referred to previous decisions in which it had held that a debtor was not entitled to enforce the penalty by way of setoff in a suit brought upon the note by the bank. The court expressed a concern for any narrowing of the punishment prescribed by statute, even if that narrowing be only by way of permitting a setoff. Accordingly, the court concluded that no setoff would be allowed.

In this case the plaintiff argues that he is attempting to enforce a civil penalty and thus the holding of *McCollum* should be determinative.

By contrast, the defendant cites *New York Credit Men's Adjustment Bureau, Inc. v. Bruno-New York, Inc.*, 120 F.Supp. 495 (U.S.D.C.S.D.N.Y.1954), wherein the trustee in bankruptcy sued a creditor for treble damages under the Clayton Act. The defendant pleaded setoffs and counterclaims for goods sold and delivered. The court specifically distinguished the *McCollum* decision on the basis that the instant action was viewed as a remedial action, rather than one for a penalty. The court said that where an individual sued for damages, the measure of which is harm to himself, the nature of the action is remedial and the fact that the damages so found are trebled does not change the action into one for a penalty. The court concluded:

" . . . By cancelling or reducing the defendants' provable claims, the injured party is in effect being paid all the compensatory damages to which he is entitled and for which the statute provides. To deny such set off simply because plaintiff is or becomes bankrupt would increase the statutory measure of the recovery by the amount of the outstanding claim." 120 F.Supp. at 498.

The parties have cited various cases in support of their respective positions that the T.I.L.A. civil liability provisions are either punitive or remedial. None of the plaintiff's cases involve any sort of factual or legal context wherein consideration of the distinction was important. The cases cited by the defendant, however, and those found by the court are persuasive that the civil liability provisions of the T.I.L.A. are remedial in character. *Porter v. Household Finance Corp. of Columbus*, 385 F.Supp. 336 (U.S.D.C.S.D.Ohio 1974), is perhaps most illustrative. The court there considered whether the trustee in bankruptcy could properly entertain a T.I.L.A. suit on the assumption that suits for penalties could not be so brought. Before concluding that the statute was remedial, the court cited *Huntington v. Attrill*, 146 U.S. 657, 667–669, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), for its general discussion of the differences between a penal and a remedial statute:

"Strictly and primarily, they [penal statutes and penalties] denote punishment, whether corporal or pecuniary, imposed and enforced by the state, for a crime or offense against its laws. [Citations omitted.] But they are commonly used as

including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. They are so elastic in meaning as even to be familiarly applied in cases of private contracts, wholly independent of statutes, as when we speak of the 'penal sum' or 'penalty' of a bond. . . .

"Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.

\* \* \* \* \* \*

"The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual, according to the familiar classification of Blackstone: 'Wrongs are divisible into two sorts of species: *private wrongs and public wrongs*. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals, and are thereupon frequently termed "civil injuries:" the latter are a breach and violation of public rights and duties which affect the whole community, considered as a community, and are distinguished by the harsher appellation of *"crimes and misdemeanors."* '" [Emphasis in original.]

■ That the Act establishes liquidated damages does not in and of itself make it penal. Congress has labeled it a "civil penalty." 1968 U.S.Code Cong. & Admin. News, pp. 1962, 1976, and 1987. Yet, as the court in *Porter* finds, the individual debtor's monetary interests are adversely affected if the cost of credit is greater than represented and may have prevented him from obtaining cheaper credit after comparison shopping. 15 U.S.C. § 1601; *Mourning v. Family Publications*, 411 U.S. 356, 363–366, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The amount of this adverse effect is difficult to calculate; it is this difficulty that Congress resolved by providing liquidated damages. *Porter*, supra. There is no injury beyond that to the individual debtor; further, there is no injury to the public in the sense discussed in *Huntington v. Attrill*, supra.

Another consideration of the penal-remedial distinction is in *Bostwick v. Cohen*, 319 F.Supp. 875 (U.S.D.C.N.D.Ohio 1970). The court discussed whether the debtor should be forced to make an election of remedies under T.I.L.A., either rescinding the contract pursuant to 15 U.S.C. § 1635 or pursuing relief under 15 U.S.C. § 1640. As a remedial statute, such an election would be required, whereas a penal statute would permit both remedies. The court concluded that the civil liability section of the statute is remedial in purpose, saying:

"The court remains steadfast in its position that the civil liability section is remedial rather than punitive in nature even though the section provides that damages shall be two times the finance charge. The court views this double damage provision only as an incentive for aggrieved debtors to initiate civil actions to protect their rights. It was noted in the legislative history of the Act that some consumers would lack the means to institute their own civil actions, 1968 U.S.Code Cong. and Adm.News, at p. 1975. Moreover, it would seem that in many transactions the actual damage sustained by the consumer would be so small that he would not think it worth his time and effort to institute a civil action. Statutes which provide for minimum damages as an incentive to the injured person to invoke the remedy are not, of course, strangers to the law, see 25 C.J.S. Damages § 3, at 628." 319 F.Supp. at 878.

The plaintiff points out that this holding in that opinion has been criticized in *Sellers v. Wollman*, 510 F.2d 119 (C.A. 5th Cir. 1975). In response to the line of reasoning in *Bostwick*, supra (that is referred to here), the court said:

" . . . We do not view Sec. 1640, however, as a remedy for breach of contract, designed to give the nonbreaching party the benefit of his bargain. The damage provision, providing minimum and maximum limits, is inconsistent with such a thesis. Rather, Sec. 1640 provides a 'civil penalty'. . . . " 510 F.2d at 122.

I do not consider that *Sellers*, supra, leads to a different conclusion here. While it may be true that § 1640 is not in the nature of a remedy for breach of contract, that does not transform it into a penal provision as that term is defined in *Huntington*, supra, and as it should be applied here.

█ I conclude that the civil liability provision of the Act is remedial, at least for the purpose of determining whether 11 U.S.C. § 108(a) allows a setoff to be asserted by a creditor against a bankrupt T.I.L.A. claimant.

### 2. *Doctrine of Equitable Retainer.*

Perhaps the closest case to the instant one is *Kaufman's of Kentucky v. Wall*, 383 S.W.2d 907 (Ky.1964). There, the plaintiff had listed a negligence claim against the defendant as an asset on her petition in bankruptcy. Among the debts listed was an amount due the defendant on account. That debt was discharged. The plaintiff was permitted to pursue the claim in her own name following the discharge, and did so. The defendant sought to set off the debt against this claim. The court held that such a setoff was proper, stating:

" . . . [W]hile a bankruptcy proceeding, prosecuted to a successful conclusion, may discharge a person from personal liability as to a debt listed therein, such a discharge does not prevent the creditor from using the debt as a set-off against any recovery sought by the bankrupted debtor against the creditor." 383 S.W.2d at 908.

The policy applied was that the Bankruptcy Act was designed to

" . . . relieve from liability for debt an insolvent person who has brought himself within the purview of the Act. That court [referring to *Leach v. Armstrong*, 236 Mo.App. 382, 156 S.W.2d 959 (1941)] found nothing in the context of the Act that indicates any intention to create out of the debt that has been extinguished an asset that will add greater purchasing consideration to the bankrupt than he would have had if he had not taken benefit of the Act." 383 S.W.2d at 909.

The cases cited by the court in support of this conclusion involve the application of the doctrine of "equitable retainer" in the context of probate proceedings. The *Leach* case, supra, refers to a definition of equitable retainer from *Falconer v. Powe*, Bailey Eq. 156, S.C.:

" 'Equity will enforce a discount of mutual demands between the parties *really interested*, although the demands are not in the same legal right, and therefore could not be set up in discount at law.' The doctrine of equitable retainer is based upon the principle that he who seeks equity must do equity." (Italics theirs)

The court in *Leach* applied this doctrine, holding that the prior discharge of a debt owed the deceased does not prevent a setoff of that debt against the distribution to that heir. Cf. *In re Smith's Estate*, 179 Wash. 417, 38 P.2d 244 (1934).

### 3. *Defensive Setoff.*

█ There is a third basis, that of defensive setoff, on which the defendant can rely for jurisdiction in this court. The courts have generally recognized that a defensive setoff provides an exception to Rule 13(b) of the Federal Rules of Civil Procedure and may be asserted in the federal forum, despite the absence of an independent jurisdictional basis. This has been specifically recognized in the context of a defensive setoff for an amount due on a note on the face of a plaintiff's T.I.L.A. suit. *Herrmann v. Atlantic Richfield Co.*, 72 F.R.D. 182 (U.S.D.C.W.D.Pa.1976).

█ As I read the defendant's counterclaim, it does not seek affirmative recovery; rather, it seeks only to reduce the amount of the plaintiff's recovery. I think the de-

fendant is limited to that here, regardless of which jurisdictional basis is used. The requirements are that it arise out of a transaction extrinsic to that out of which the primary claim arises, that it be liquidated or capable of liquidation, that it grow out of a contract or judgment, and that it be employed defensively only to reduce the amount of an opposing party's recovery.

This theory does not fully reach the issues that are faced here, but it is supportive of a finding of jurisdiction. In that context here—namely, where the defendant is asserting a setoff following the plaintiff's discharge in bankruptcy—I think it clear that the defendant's "counterclaim" is at least such a defensive setoff for the purpose of federal jurisdiction. Thus, the court need not here face the issue of whether a creditor's counterclaim for the amount due on a note is compulsory or permissive under Rule 13(a) of the Federal Rules of Civil Procedure.

## CONCLUSION

The court's conclusion is that the defendant can set off the discharged debt against the plaintiff's claim. It matters not whether this setoff is conceptually grounded on the doctrine of equitable retainer or on the equitable application of 11 U.S.C. § 108(a). When joined with the jurisdictional concept of defensive setoff, both are sufficient doctrines to support the court's conclusion here. Further, both doctrines are grounded on similar principles.

This conclusion does not impinge on the "fresh start" policy which the Bankruptcy Act is designed to afford debtors. The bankrupt's claim here is not one that first arises after the discharge in bankruptcy, as part of the bankrupt's "new estate; " rather, it had fully accrued prior to the filing of bankruptcy. Indeed, it is the availability of the bankrupt's cause of action to the trustee which underlies the result.

Since the plaintiff has admitted in the bankruptcy proceeding that he is indebted to the defendant in an amount well above the amount he now seeks to recover from the defendant, I conclude that the proper course of action now is to dismiss the action on the basis that it affirmatively appears that no relief can be afforded to the plaintiff.

THEREFORE, IT HEREBY IS ORDERED:

1. That the plaintiff is given leave to amend his complaint within ten days from the date of this order to allege his standing to bring this action, in the absence of which the case will be dismissed for lack of standing; and

2. That upon the filing of such amended complaint, the action will be dismissed for failure to state a claim upon which relief may be granted.