In re Hobart Clay JOHNSON and Ann Johnson, Debtors.

Hobart Clay JOHNSON and Ann Johnson, Plaintiffs,

v.

RUTHERFORD HOSPITAL and Murfreesboro Bank & Trust Company, Defendants.

Bankruptcy No. 380–02057.
Adv. No. 380–0593.

United States Bankruptcy Court, M. D. Tennessee.

July 31, 1981.

---

**186**

Gregory L. Sperry, Legal Services of Middle Tennessee, Inc., Murfreesboro, Tenn., for plaintiffs.

George H. White, Murfreesboro, Tenn., for defendants.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This is an action brought by the debtors pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* [hereinafter cited as TILA]. The court's findings of fact were set forth in d⌐tail in the memorandum that accompanied the order entered on June 11, 1981, but will be recited again in abbreviated form below.

In August of 1979, plaintiff Ann Johnson received services from the defendant Rutherford Hospital in an amount exceeding $1,500.00. The hospital arranged for the defendant Murfreesboro Bank & Trust Company to make a loan to the plaintiffs to enable them to pay the bill. On September 24, 1979, the plaintiffs executed a promissory note in the principal amount of $1,557.00 plus interest at the rate of 14.28 percent per annum. The plaintiffs filed a voluntary petition with this court on July 7, 1980, and scheduled among their debts the sum of $1,829.00, which represented the unpaid balance of the bank note. The debtors did not list any TILA claim against the defendants in their original schedules. The trustee filed his no asset report on August 4, 1980. On or about August 26, 1980, the debtors filed an amendment to their schedules to include the TILA claim against the defendants as an asset.

Both debtors were discharged on September 16, 1979. On the same date, the debtors filed this cause of action, alleging that the defendants had violated TILA and Regulation Z promulgated thereunder, 12 C.F.R. § 226 *et seq.*, by failing to disclose that the defendant hospital was a creditor and arranger of credit. The debtors sought to recover damages in the amount of $732.96, costs, and a reasonable attorney fee as provided by § 130(a) of TILA, 15 U.S.C. § 1640(a).

Counsel for both of the defendants conceded during the hearing and in his post-trial brief that the failure to disclose the hospital as a creditor prior to the credit transaction on September 24, 1979, constituted a violation of the statutory and regulatory disclosure requirements. The defendants, however, challenged the debtors' standing to pursue this action and, in the alternative sought to setoff the amount of any recovery by the debtors against the amount of the unpaid balance due on the note. The bank, in addition, sought to exonerate itself from any liability for the TILA violation.

Concluding that the debtors' TILA claim had passed to the trustee upon the filing of

the bankruptcy petition and thus that the trustee was the real party in interest with standing to pursue this action until he had abandoned the same, the court on June 11, 1981, entered an order permitting the trustee a reasonable time within which to intervene or abandon the claim. The trustee subsequently abandoned the cause of action, and the court granted a motion by the debtors to amend their complaint to reflect this development.

The issues that remain to be resolved are (1) whether, by virtue of the trustee's abandonment, the debtors may pursue the TILA claim after their discharge has been granted and (2) if so, whether the defendants are entitled to assert their right of set-off in such a post-discharge TILA cause of action.

### A. The Debtors' Post-discharge TILA Cause of Action

Several courts have permitted trustees or debtors after abandonment to pursue TILA claims after the debtors have been discharged on the underlying debt by characterizing TILA relief as partly or entirely penal in nature. *Riggs v. Government Employees Financial Corp. (In re Ferguson)*, 623 F.2d 68 (9th Cir. 1980); *Newton v. Beneficial Finance Co.*, 558 F.2d 731 (5th Cir. 1977). Although persuasive, the rationale of these decisions is not applicable in this proceeding in the light of the Sixth Circuit's characterization of TILA relief as remedial rather than penal in nature. *Murphy v. Household Finance Corp.*, 560 F.2d 206, 209–11 (6th Cir. 1977). This characterization has been the subject of criticism, *see*, Dilenschneider, *Truth in Lending Actions Pass to Trustee in Bankruptcy*, 51 Am. Bankr. L.J. 371, 372–73 (1977); Note, 29 Case W. Res. L. Rev. 270, 279–83 (1978), but remains the law in this circuit and is binding on this court.

■ At least one court that characterized TILA relief as remedial has permitted the post-discharge prosecution of a TILA claim by debtors. *Binnick v. AVCO Financial Services of Nebraska, Inc.*, 435 F.Supp. 359 (D. Neb.1977). Although the reasoning of the *Binnick* court is somewhat difficult to follow, this court concurs with its conclusion that debtors may proceed with a post-discharge TILA cause of action that has been abandoned by their trustee in bankruptcy. A majority of the courts, primarily in Rule 13(a) rulings that lenders' counterclaims for the balances owed by TILA claimants are permissive rather than compulsory in nature,[1] have characterized the TILA cause of action as one created by federal statute that is separate and distinct from the underlying debt. *Fetta v. Sears, Roebuck & Co.*, 77 F.R.D. 411, 414 (D.R.I.1977); *Gammons v. Domestic Loans of Winston-Salem, Inc.*, 423 F.Supp. 819, 820–21 (M.D. N.C. 1976); *Bantolina v. Aloha Motors, Inc.*, 419 F.Supp. 1116, 1122 (D. Haw.1976); *Zeltzer v. Carte Blanche Corp.*, 414 F.Supp. 1221 (W.D. Pa.1976); *Jones v. Sonny Gerber Auto Sales, Inc.*, 71 F.R.D. 695 (D. Neb. 1976); *Agostine v. Sidcon Corp.*, 69 F.R.D. 437, 441–43 (E.D. Pa.1975); *Ball v. Connecticut Bank & Trust Co.*, 404 F.Supp. 1 (D. Conn.1975); *see Perry v. Beneficial Finance Co.*, 81 F.R.D. 490 (W.D. N.Y.1979); *Grey v. European Health Spas, Inc.*, 428 F.Supp. 841 (D. Conn.1977); *Parr v. Thorp Credit, Inc.*, 73 F.R.D. 127 (W.D. Iowa 1977); *Jones v. Goodyear Tire & Rubber Co.*, 73 F.R.D. 577, 579 (E.D. La.1976). Although the court of appeals for this circuit has not addressed this issue, the Sixth Circuit has held, in the leading case interpreting the TILA's one-year statute of limitations, that the credit transaction for which disclosures are required under the Act is completed when the lender and the borrower contract for the extension of credit and, consequently, that the violation of the Act occurs at the latest when the credit is extended. *Wachtel v. West*, 476 F.2d 1062, 1965–66 (6th Cir.),

---

1. The court recognizes that several courts have reached a contrary conclusion and have held that lenders' counterclaims for the balances owed by TILA claimants are compulsory counterclaims under Rule 13(a). *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357 (5th Cir.

1979); *Gibson v. Family Finance Corp.*, 404 F.Supp. 896, 899 (E.D. La.1975); *Kenney v. Landis Financial Group, Inc.*, 376 F.Supp. 852, 854 (N.D. Iowa 1974); *see Rodriguez v. Family Publications Service, Inc.*, 57 F.R.D. 189, 193 (C.D. Cal.1972) (dictum).

cert. denied, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973); see Rust v. Quality Car Corral, Inc., 614 F.2d 1118 (6th Cir. 1980); accord, Bartholomew v. Northampton Nat'l Bank, 584 F.2d 1288, 1296 (3d Cir. 1978). Hence, the defendants' TILA violation occurred on or before September 24, 1979, and the debtors' cause of action under the statute accrued at that time. The debtors' right to recovery under § 130(a) is unaffected by the subsequent discharge of the underlying debt.

### B. The Creditors' Right of Setoff

■ Those courts that characterize TILA relief as penal in nature and that permit post-discharge prosecutions of TILA claims under § 130(a) of the Act also decline to allow lenders to offset the TILA recovery against the underlying debt. Riggs v. Government Employees Financial Corp., supra, 623 F.2d at 73–75; Newton v. Beneficial Finance Co., supra, 558 F.2d at 732. This rationale is not applicable in this proceeding in the light of the Sixth Circuit's characterization of § 130(a) relief as being remedial in nature. Murphy v. Household Finance Corp., supra, 560 F.2d at 210–11. The court in Binnick, which also permitted a post-discharge prosecution of a TILA claim while characterizing TILA relief as remedial, applied the setoff provisions of § 68 of the Bankruptcy Act of 1898, as amended, to allow the lender to offset the unpaid balance of the underlying debt. Binnick v. AVCO Financial Services of Nebraska, Inc., supra, 435 F.Supp. at 362–66. In reaching this conclusion, that court interpreted § 14(f)(2) of the former Act, which was added by amendment in 1970 and which provided:

f. An order of discharge shall—

. . . .

(2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.

11 U.S.C. § 32(f)(2) (1976). The Binnick court construed the effect of this provision as follows:

The discharge in bankruptcy operates to discharge the debt and to enjoin the defendant from "instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt." The injunctive language is taken from 11 U.S.C. § 32(f)(2) and was first enacted in 1970. It was enacted to "prevent creditors from instituting state court actions in the hope that the bankrupt would ignore the proceedings based on a misplaced reliance on the discharge or due to a lack of funds to defend." Wood v. Fiedler, 548 F.2d 216, 219 (C.A. 8th Cir. 1977). Cf. 2 U.S.Code Congressional and Administrative News, pp. 4156–4157 (1970). I think a fair reading of this section is that it operates to bar any affirmative recovery of the debt as a personal liability of the bankrupt. I do not think that the section prevents the defendant from setting off its claim against the judgment which the plaintiff now seeks, where both claims arise out of transactions that accrued prior to the bankruptcy.

435 F.Supp. at 363. The Binnick court thus interpreted § 14(f)(2) as having the effect only of enjoining any affirmative recovery of a debt discharged in bankruptcy and not of enjoining the setoff of a discharged debt against a post-bankruptcy judgment. The specific language of § 524(a)(2) of the Bankruptcy Reform Act of 1978, however, appears to have changed this result:

(a) A discharge in a case under this title—

. . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt [discharged under section 727, 944, 1141, or 1348 of this title] as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived; . . . .

11 U.S.C. § 524(a)(2) (1979) (emphasis supplied). Section 524(a)(2) thus clearly enjoins not only an affirmative recovery of a debt discharged in bankruptcy, but also the

setoff of a discharged debt against a post-petition judgment.

Such an interpretation of § 524(a)(2) is consistent with the setoff provisions of § 533(a). The setoff provisions of § 533(a), like its predecessor in the old Act, permit a creditor to offset a prepetition debt owed the debtor against a claim against the *bankruptcy estate.* They do not allow a prepetition creditor to offset a claim against the *debtor* that has been discharged against a post-petition liability to the debtor, regardless of whether the cause of action may have arisen prior to bankruptcy. This distinction was explicit in the language of § 68(a) of the former Act, which referred to mutual debts or mutual credits "between the *estate* of a bankrupt and a creditor." 11 U.S.C. § 108(a) (1976) (emphasis supplied). The distinction apparently was overlooked by the court in *Binnick,* however, an oversight that has been noted in a recent commentary. Annot., 43 A.L.R. Fed. 413, 415 (1979).

■ An appropriate order will be entered awarding the debtors judgment against both defendants in the amount of $732.96, costs, and a reasonable attorney fee as provided by 15 U.S.C. § 1640(a) even though the debtors have been represented by an attorney from Legal Services of Middle Tennessee, a nonprofit organization which provides legal representation for the indigent in civil matters. An attorney-fee award under this provision may be granted notwithstanding the debtor's representation by a legal-aid-society attorney. *E. g., Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120, 123–24 (5th Cir.), *cert. denied,* 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980); *Sellers v. Wollman,* 510 F.2d 119 (5th Cir. 1975); *Campbell v. Liberty Financial Planning, Inc.,* 422 F.Supp. 1386, 1389 (D. Neb.1976); *Gillard v. Aetna Finance Co.,* 414 F.Supp. 737 (E.D. La.1976); *Jones v. Seldon's Furniture Warehouse, Inc.,* 357 F.Supp. 886 (E.D. Va.1973); Annot., 29 A.L.R. Fed. 906, 910–11 (1976); *see Jones v. Allied Loans, Inc.,* 447 F.Supp. 1121 (D. S.C.1977). *Contra Engle v. Shapert Construction Co.,* 443 F.Supp. 1383, 1389 (M.D.

Pa.1978) (such award would not make debtors whole for expenses incurred in enforcing statute but would only further penalize creditor). The court in *Jones v. Seldon's Furniture Warehouse, Inc., supra,* expressed the rationale for such awards:

[I]n certain instances conduct redressed in litigation is of so serious a nature with respect to the public welfare that the full burden of enforcement must be shifted to those whose conduct endangers the public.

Unquestionably the application of these considerations is the exception rather than the rule. Two common legal areas where they are found ... are in antitrust cases ... and in Fair Labor Standards Act cases .... Further, the Court is persuaded that Truth-in-Lending Act cases merit similar consideration.

... Congressional intent with regard to the importance of private enforcement is clear from legislative history. Moreover, legislative history is expressive of the need for a strong protective public policy with regard to credit transactions. For both reasons the Court is of the opinion that the attorneys' fees provision must be viewed with an eye toward the public policy as expressed in and codified by the Act.

357 F.Supp. at 887 (citations omitted).